Gilmer, assignee, *et al. vs.* Warren & Scarborough.

perty was given into his possession, where it had remained ever since; and this action was brought by the trustees named in the will, to recover the possession of the negro property from him.    The Court held, that they could not recover and non-suited the plaintiffs; and on this decision, error is assigned.

DOUGHERTY, for plaintiff in error.

WARNER, for defendant in error.

---

No. 71.—JOHN H. GILMER, assignee, *et al.* plaintiffs in error, *vs.* WARREN & SCARBOROUGH, defendants.

[1.] The Act of 1850, authorizing the Superior Court to make a final decis-ion on *certioraries*, without sending them back with instructions, as there-tofore practiced, does not apply to *certioraries* from the Inferior Court.

Gilmer, assignee, *et al. vs.* Warren & Scarborough.

.[2.] The direction to pay over money raised by process of garnishment, to judgments or executions against the debtor, according to the priority of their respective liens as established by law, will be observed and enforced by the Courts, so long as the fund is in the hands of the Court or its officer, and not actually paid out.

Certiorari, from Crawford Superior Court. Decision by Judge POWERS.

Warren & Scarborough, holding a *fi. fa.* from the Inferior Court against John S. Johnson, caused a summons of garnishment to be issued to Holmes Steele, who, in his answer, admitted that he was indebted to defendant One Hundred and Twenty Dollars: whereupon, at the May Term, 1850, of said Inferior Court of Crawford County, an order was passed and entered on the minutes, that the garnishee, within ninety days, pay the money to the Clerk, and that the Clerk pay it over to the plaintiffs in *fi. fa.*

At May Term, 1851, the money being in the hands of the Deputy Sheriff, John H. Gilmer, as assignee of a *fi. fa. vs.* Johnson, older than the *fi. fa.* of Warren & Scarborough, and which was in the Sheriff's hands at the time of granting said order, moved a rule to set aside said order and pay the money to said older *fi. fa.* Warren & Scarborough tendered an issue, alleging that said oldest *fi. fa.* had been paid off, and was fraudulently and collusively kept open. Issue was joined, and Counsel for Warren & Scarborough moved a continuance on the ground that he had never before seen said *fi. fa.* and had relied on the order of the Court, passed at May Term, 1850, and was, in consequence, not prepared with testimony to sustain the issue he had tendered. The continuance was refused by the Court; and the affirmants in the issue offering no testimony, the Court granted the rule setting aside the former order, and ordering the money to be paid to the older *fi. fa.*

On *certiorari* to the Superior Court, the Judge held, that there was no sufficient ground to set aside the former order of the Court, and sustained the *certiorari* and ordered the money

to be paid to the *fi. fa.* of Warren & Scarborough; and on this decision error is assigned.

COOK & MONTFORT, for plaintiff in error.

HUNTER, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

What is the true construction of the agreement entered into between the Counsel of the respective parties in this case?

When the last judgment of the Inferior Court of Crawford County was rendered in favor of Gilmer, against Warren & Scarborough, to save the latter the trouble and expense of filing exceptions to the decision and suing out a *certiorari* to procure its reversal, it was stipulated that the case might be carried up to the Superior Court, as though the regular course pointed out by law were pursued.

Upon whom, then, did the burden of proof rest, to set aside this judgment? Certainly upon Warren & Scarborough. Being rendered by a Court of competent jurisdiction, it is presumed to be right, until the contrary is made to appear. Had a *certiorari* been prosecuted, in response to the mandate of the Court awarding it, all the evidence upon which the Inferior Court acted would have been sent up. The agreement prevented this. And yet, the Circuit Court not only presumed against the judgment of the Inferior Court, in the absence of all proof impeaching it; but went further, and refused to allow the party in whose favor the judgment was rendered, to support it by evidence.

Indeed, the Court took this view of the whole case, and put its decision distinctly upon it, viz: that the first order passed in favor of Warren & Scarborough, fixed, conclusively, the rights of the litigating parties; and that it was not competent for the Inferior Court, subsequently, upon any testimony whatever, to annul this first order. And the Judge directed the Inferior Court to pay out the money accordingly.

Gilmer, assignee, *et al. vs.* Warren & Scarborough.

[1.] We would remark, in passing, that the Superior Court has no power to render a final judgment upon *certioraries* from the Inferior Court. The Act of 1850, (*Cobb's Dig.* 529,) extends only to *certioraries* from Justice's Courts.

[2.] But were the rights of Gilmer concluded by the first judgment? So far from it, we hold they were not at all affected by it. The garnishee, Steele, deposed at the May Term, 1850, of the Court. At that term, and before the money admitted by the garnishee to be due was paid into Court, a prospective order was taken, requiring it to be paid over to the Clerk, and by him to Col. Hunter, the Attorney of Warren & Scarborough, within three months. At the time the order was taken, the older *fi. fa.* of Gilmer was in the hands of Hicks, the Deputy Sheriff, and placed there to claim this fund. And the complaint is, that it was fraudulently withheld by some collusive arrangement between Col. Hunter and the Sheriff. Twelve months thereafter, to-wit: at the May Term, 1851, of the Inferior Court, the money, for some reason or other, not having been paid out, but still in the hands of the Court or its officer, Gilmer comes forward and moves the Court to have it applied to his prior lien; and the Court, setting aside its former order as having been improvidently granted, directs the fund to be paid to Gilmer.

It is not pretended that Gilmer was a party to the first order. The burden of his complaint is, that he had no notice of it; that his *fi. fa.* was withheld. His rights then, so far from being fixed, were not and could not have been prejudiced in the least by that order. He finding a fund in Court, then, raised by process of garnishment, comes forward, and planting himself upon his Statutory preference, (See *Cobb's Dig.* 78,) claims, as he had a right to do, under the law, to have the money appropriated to his demand. And why was he not entitled to it? What was it to him, whether the first order was fairly or fraudulently obtained?

The regularity of the Gilmer execution is attacked. The Circuit Court did not adjudge this point; hence, we are not called upon to do so. We have inspected the record from Lee

County, however, upon which this precept issued, and see nothing in it which would authorize this or any other Court to vacate the proceeding. It is not true, in point of fact, that the judgment of Warren & Scarborough is against John S. Johnson individually, while the judgment in favor of Gilmer, as assignee, is against him representatively. Both judgments are against John S. Johnson, individually. There are two Johnsons—one John S. and the other John Johnson. Not only is John S. Johnson a defendant in the Gilmer judgment, but Oglesby & Jackson, as the administrators of John Johnson, deceased, are also co-defendants. But the two Johnsons are wholly distinct persons; and we repeat, John S. Johnson, individually, is a judgment debtor in both. And while there may be some irregularity in the proceedings, they are clearly amendable; and the defects, such as they may be, are not such as to warrant the Court in setting aside or postponing this older lien.