# Wheeling.

## DRYDEN v. SWINBURN.

Decided May 10, 1879.

1879
Special Term.

J. D. gave to T. S. the following notice under the 30th section of chapter 118, of the Acts of 1872-3 :

"To T. S. :

"You are hereby notified, that I shall contest before the county-court of Kanawha county, West Virginia, your election as clerk of the circuit court of said county of Kanawha, at the recent election held in said county on the 8th day of October, 1878, upon the ground that at the time of said election you were not, and never had been, entitled to vote in said State, and by the express provisions of the Constitution of said State you could not be elected to said office at said election ; and that I shall there resist and contest your right to hold said office or perform the duties thereof, and shall there claim to be myself duly and legally elected to said office at said election. You are further notified, that I shall docket this notice on the 1st day of November, 1878, .if the court then be in session, and if not in session, then the 1st day of December term, 1878, of said court.

"17th of October, 1878.

"J. D."

This notice was sworn to and served on October 19, 1878. It was docketed on November 1, 1878, the October term of the said court having continued to that time. The court dismissed the notice, holding it had no jurisdiction to try it. A writ of certiorari was issued on November 5, 1878, by order of the circuit court made on a petition therefor by J. D., sworn to and accompanied by a copy of the record, without any previous notice of the application for the writ being given to T. S., and without any rule to show cause against its being granted. But T. S. was by order of the court summoned to answer it, when the county-court had responded to the certiorari. On the hearing, the circuit court

reversed, set aside and annulled the judgment of the county-court and retained the cause for trial in the circuit court. HELD:

1. The notice was sufficient, it not being necessary, when the ground of the contest was only the want of qualification to hold the office by the party returned as elected, to furnish with it a list of votes to be disputed, nor to state facts showing that the person giving the notice was entitled to the office. It is sufficient that the notice should show he was a candidate for the office at the election, and set forth the facts on which he based his objections to his opponent holding the office.

2. The court had jurisdiction of the case, though the notice was returnable to a day of the court during its October term, the 32d section of said act, chapter 118 of Acts of 1872-3, not requiring the notice to be returnable to a day during the November term of the court or the next term held after November; this section only directing when the case was to be tried, and not when it should be docketed.

3. The circuit court properly granted the *certiorari* on a petition accompanied by a copy of the record and sworn to, though no previous notice had been given to the opposite party and no rule to show cause why the writ should not be awarded had been given. The giving of such notice and the awarding of such rule being a matter within the discretion of the court, and this discretion was properly exercised in this case.

4. The circuit court did not err in reversing, setting aside and annulling the order of the county-court dismissing the notice as one over which they had no jurisdiction.

5. The circuit court did err in retaining the cause for trial, as it has no right to try *de novo* any case brought before it by *certiorari* to the judgment of a county-court, the 22d section of chapter 17 of Acts of 1872-3, directing the retention of cases in the circuit court applying only to cases brought before it by appeal, writ of error or *supersedeas*.

6. The circuit court ought to have annulled the order of the county-court and remanded the cause to the county-court to be proceeded with and tried.

7. In all cases of *certiorari*, when used as an appellate proceeding, the superior court has a right to affirm the judgment of the inferior court, or to set aside and annul it and enter up such judgment as the inferior court ought to have done, or remand the cause to it as in a case brought up on writ of error.

8. The judgment of a county-court may be brought up for review in the circuit court in a proper case by writ of *certiorari*; but under our statutes the proper mode of bringing up any judgment or

order of a circuit court in controversy between parties for review by the Supreme Court of Appeals, where such judgment or order is not in a chancery proceeding, is by writ of error.

9. The record showing that the office of the clerk of the circuit court of Kanawha county is of greater value than one hundred dollars, the Supreme Court of Appeals has appellate jurisdiction by writ of error to review the decision of the circuit court in such a case.

10. When the cause is remanded to the county-court for further proceeding, as it should be, they have a right to try and decide the same, though such trial be necessarily had after the time limited for the qualifying of the clerk; the direction contained in the 32d section of said act not to continue the case beyond that time not preventing the plaintiff from having such trial.

Writ of error and *supersedeas* to the judgment of the circuit court of Kanawha county rendered on the 20th day of December, 1878, in a proceeding on a writ of *certiorari* in said court then pending, wherein John Dryden was plaintiff and Thomas Swinburn was defendant, awarded on the petition of the said Swinburn.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the judgment complained of.

GREEN, PRESIDENT, furnishes the following statement of the case:

This is a case of contested election under the provisions of chapter 118 of the Acts of 1872–3. On October 19, 1878, John Dryden, who had been a candidate for clerk of the circuit court of Kanawha county at the preceding election, had served on Thomas Swinburn, who had been declared elected by the commissioners to this office, a notice of a contesting of his election as clerk of the circuit court of Kanawha county. The notice was as follows:

"To THOMAS SWINBURN, ESQ.:

"You are hereby notified, that I shall contest before the county-court of Kanawha, West Virginia, your election as clerk of the circuit court of said county at the recent election held in said county on the 8th day of October, 1878, upon the ground that at the time of said election

you were not, and never had been, a citizen of the United States, or of the State of West Virginia, and were not at the time of said election, and never had been entitled to vote in said State, and by the express provisions of the Constitution of said State, you could not be elected to said office at said election; and that I shall there resist and contest your right to hold said office, or perform the duties thereof, and shall there claim to be myself duly and legally elected to said office at said election. You are further notified, that I shall docket this notice, and insist upon the trial thereof, in the county-county of Kanawha county on 1st day of November, 1878, if the court be then in session, and if not in session, the 1st day of December term, 1878, of said county-court.

"JOHN DRYDEN.

"17th of October, 1878."

The facts set forth in this petition were sworn to as true by John Dryden, as appears by an affidavit at the foot thereof. On the 1st day of November, 1878, the following entry was made in this case by the county-court of Kanawha county:

"JOHN DRYDEN,
        vs.       } On notice to contest an election.
"THOMAS SWINBURN.

"This day came the plaintiff by his attorneys, and it appearing to the court that the defendant has been duly served with a copy of said notice, on the plaintiff's motion it is ordered that the said motion be and the same is now docketed; and thereupon the defendant, by counsel, demurred to the jurisdiction of the court in this cause, in which demurrer the plaintiff joined; and the questions of law arising on said demurrer being argued and submitted to the court, the court is of opinion to sustain said demurrer and the same is *sustained* accordingly. It is therefore considered by the court that said notice be dismissed, and that the defendant recover of the plaintiff his costs by him about his defense in this behalf expended, including $10,00 as allowed by law."

On November 5, 1878, John Dryden filed his petition in the circuit court of Kanawha county, praying that the court would award him a writ of *certiorari*, to bring into that court the record and proceedings in this case, and when brought there that its errors be corrected, and the order sustaining the demurrer and dismissing the notice be vacated, and that the circuit court would either hear and determine the case, or remand it to the county-court to hear and determine the same on correct principles. The errors in this order of the court, as deemed to exist by the plaintiff, are pointed out in detail in this petition ; and among other reasons for claiming that this order was erroneous the petition states, that if the construction claimed for chapter 118, Acts of 1872, and chapter 11 of Acts of 1877, and acted on by the county-court be correct, the case could not be tried in November, because the term of the county-court did not commence in that month, but in October ; and it could not be tried at the next or any subsequent term of the court, because the next term commenced on the third Monday in December, 1878, which was more than sixty days after the declaration of the election of Swinburn, and the case must by law be decided within these sixty days. The inference drawn is that the county-court misconstrued these laws. A copy of the record is filed with the petition. This petition was sworn to by John Dryden, the petitioner. The circuit court awarded the writ of *certiorari* prayed for on his giving bond and security in the penalty of $100.00, conditioned according to law, which the record states was at once done, and the writ of *certiorari* ordered to be issued. The writ was accordingly issued by the clerk of the court, and was as follows :

" STATE OF WEST VIRGINIA,

" *To the President and Justices of our County-Court of Kanawha, greeting :*

" For certain causes moved before the judge of our circuit court of Kanawha county, we command you and

every one of you, that you, or one of you, under your or one of your seals, the records and proceedings upon a contested election, which contest was lately made by John Dryden in said county-court with Thomas Swinburn, for the office of clerk of the circuit court of Kanawha county, with all things touching the same, as fully and wholly as the same are before you now remaining, to the judge of our said circuit court at the court-house of said county on the 8th day of November, 1878, do send and certify enclosed, together with this writ.

"Witness, W. E. G. Gillison, clerk of our said court, at the court-house of said county, this 5th day of November, 1878, and in the sixteenth year of the State.

" W. E. G. GILLISON."

This writ was duly served, and the record was duly certified by the president of the county-court and an associate justice, and an order made in said court on November 6, 1878, that said record should be certfied in obedience to said writ of *certiorari*; and on the 8th day of November, 1878, the return of this writ was noted on the record of the circuit court, and the case there docketed for trial.

On Saturday the 14th of December, 1878, on the plaintiff's motion a summons was awarded against the defendant, requiring him to appear on Monday morning next the 16th day of December, 1878, at 10 o'clock to answer this petition and writ, or show cause, if any he can, why the prayer of this petition should not be granted. This summons was issued and returned, not served for want of time ; and on Monday the 16th day of December, 1878, an *alias* summons was ordered by the court returnable the next day. It was duly issued, and the return on it was an affidavit of Thomas A. Vickers that he had served it on the defendant Thomas Swinburn on December 16, 1878, by posting a copy thereof, and leaving the same posted, at the front door of the dwelling-house of the said Swinburn, his usual place of abode ; said Swinburn

not being found there, and no other member of his family being there found.

On December 19, 1878, the plaintiff being present, Thomas Swinburn, by his attorney, appeared merely for the purpose of moving, and he did move, to quash this return and this summons as insufficient in law, which motion, after hearing the evidence of both parties the court overruled, and sustained this return. And the defendant, still appearing for no other purpose, then moved the court to quash this summons because it was issued and made returnable during the same term of the court, and the short time given for its return was oppressive and illegal, which motion the court also overruled. The defendant moved the court to dismiss the writ of *certiorari* which had been awarded, as improvidently awarded, which motion the court also overruled. The defendant then objected to the hearing of the case that term of the court; but the court overruled this objection, and ordered the cause to be proceeded with. The defendant then moved the court to continue the cause till the next term, because the allowance of so short a time for the issuing of the writ to its return, in which he was allowed to prepare for his defense, was unreasonable, oppressive and illegal. But the court overruled the same, and decided that the county-court erred in sustaining the demurrer of the defendant and dismissing the plaintiff's notice, and vacated and annulled this order of the county-court, and ordered the case be retained in the circurt court to be there tried and determined. The defendant objected to this retention of the case by the circuit court; but his objection was overruled. To all of which rulings of the court the defendant excepted.

Thomas Swinburn on the next day, December 20, 1878, tendered a notice to John Dryden and affidavit thereto, which was returnable that day, and moved that it be docketed and filed. To this the plaintiff objected ; but the court overruled his objection, and ordered the same to be filed. This notice was given under the 30th sect-

ion of chapter 118 of Acts of 1872–3, and was dated De-
cember 19, 1878, and was executed.   This notice stated
that Thomas Swinburn would object to and contest John
Dryden's election to the office of clerk of the circuit court
of Kanawha county, and his right to contest his Swin-
burn's election to the same, because he was disqualified
from holding said office under the provisions of section 5
chapter 7 of the Code of W. Va. because he had entered
into a contract in writing with W. E. G. Gillison, who
had been and was the clerk of said court for the term be-
ginning January 1, 1873, to farm this office, and did
farm the same ; and that he was still acting under this
farming contract and receiving the proceeds, fees and em-
oluments of this office ; and that under this law he was
thereby forever disqualified from holding this office.   In
this notice he stated that these facts came to his knowl-
edge only on the 19th day of December, 1878, and it re-
quired the defendant to produce before the court the next
day this contract, and notified him that he would then ask
the court to docket this notice.

On the 20th of December, after the docketing of this
notice, the defendant again moved the court to continue
the cause for the reasons before assigned ; but the court
overruled this motion.   He again renewed this motion
and introduced testimony to sustain it ; but the court
overruled the motion for a continuance ; and the defend-
ant excepted to this action of the court.   It was then
proven by the defendant, that the office of clerk of the
circuit court of Kanawha county is of greater value than
$100,00.   The defendant then signified his intention of
asking a writ of error and *supersedeas* to the order made
by the court the day before, annulling the order of the
county-court and retaining the case for trial in the cir-
cuit court ; and he asked the court to suspend the execu-
tion of this judgment for a reasonable time to enable him
to present a petition for such writ of error and *superse-*
*deas*, and signified his readiness then to give the suspen-
ding bond required by section 4, chapter 17, of Acts of

1872-3, in such penalty as the court might require.  But the court refused to suspend the execution of this judgment till after the trial of the case on its merits, being of opinion that this judgment was not·final and no writ of error or *supersedeas* would lie thereto ; to which ruling of the court the defendant excepted. He also moved the court to quash the plaintiff's notice as insufficient, which motion the court overruled, and he excepted.   He then demanded and moved the court for a jury for the trial of the matter of fact arising in the case, which motion the court also overruled ; and he excepted.   The court then on December 20, 1878, tried the case on its merits, and having heard the evidence, was of opinion and decided that Thos. Swinburn at the time of the general election, October 8, 1878, and at the time he received a certificate of election as clerk of the circuit court of Kanawha county, was not a citizen of the United States, and that therefore he was ineligible to this office, and decided also that the contestant, Jno. Dryden, not having received a majority or plurality of the votes of said office, was not elected to the same. And it therefore declared that no person had been duly elected to this office at the election held October 8, 1878, and it decided that each party pay his own costs.   And its judgment was suspended, to afford an opportunity to obtain a writ of error and *supersedeas,* till January 1, 1879, upon the defendant giving bond in the penalty of $100.00 conditioned according to law.

The bill of exceptions to the motion to quash the return on the summons issued by the court sets out the evidence offered by both parties on the hearing of this motion on December 17, 1878.

Thomas A. Vickers, who served the notice, testified that he only knew Thomas Swinburn's usual place of abode from information received from parties living near where he posted a copy of the notice.   That he never had been there before ; only knew before that he lived on Davis creek.   That he posted the notice where he was informed, and had reason to believe, his usual place o⊥

abode was. Had, when he served this summons, no personal knowledge where his usual place of abode was then; but from information received from persons living near and from persons at the house at the time of the service he had reason to believe, and did believe, it was his usual place of abode. He did not get his information from the defendant himself. He found at the house two children and two ladies who said they were staying there to take care of some of his things. What they said was objected to by Swinburn's counsel, but the objection was overruled, and the defendant excepted. They told him that Swinburn had hauled away a load of his things that morning, and they were watching the balance of the things. This was objected to by defendant's counsel, the objection overruled by the court, and an exception taken to it. When he reached the house of the defendant's father, a lady directed him to Thomas Swinburn's house, saying he was not at home; but she said, his wife was at home. When he got there the ladies he found there said that neither of them was the wife of Thomas Swinburn. They said she was not there; and they did not know where she was. They said they were not members of his family; and after staying half an hour I said to them, I can do nothing but stick up the notice at the door. They said they had no pins with which I could stick up the notice except those in their shawls. I looked up a hatchet, drew a nail out of the wall and stuck up the copy of the summons at the front door and left. They said that one of them was Mrs. Lloyd and the other a Miss or Mrs. Hagar. To a question asked by the defendant Swinburn's counsel, whether he had received information either before or after leaving the house that at that time it was not his usual place of abode, the witness said, that as he went out, five or six persons, whom he met on the road or at whose houses he called, directed him to this house as Thomas Swinburn's residence; one of them told him he thought he was moving that day. On his return he met one Levely who told him that he

understood Swinburn was keeping out of the way ; that Swinburn had some time before sent his family to Mrs. Webb's, on Coal river, and he, Swinburn, had gone to Dr. Henderson's, about Coalburg, but that Swinburn and his family had come back to their house about ten days before that time. The house of Thomas Swinburn is from one-half to three-fourths of a mile from his father's by the road and only about three hundred yards by a direct line. A person could go across by the direct line between the houses sooner than by riding around the road. He met a wagon loaded with beds and bedding as he went to the house. He heard that Thomas Swinburn was moving to a place opposite Charleston, near the ferry. He went to this ferry, did not find him, and was told he had gone to the *Courier* office about 4 o'clock. He went there and found it closed, and no lights in the building and did not go in.

Another witness proved that he was at the house of Thomas Swinburn on October 31 and November 9, 1878. It was near his father's. Another witness proved that this had been his residence and he had not heard of his moving on the 16th day of December, 1878, the day this summons was returnable. Another witness testified that he had looked for Thomas Swinburn from three o'clock to nine o'clock P. M., but could not find him and had heard then he was living in town but could not find him. Another witness, a neighbor living about one mile from him, proved that Thomas Swinburn's family were at his house, near his father's, on Saturday the 14th of December, 1878, at night, and his wife said she was expecting her husband at that time. Three or four weeks before his wife went away on a visit but had returned and was at home on December 14, 1878.

This being all the evidence on this point, as before stated, the court held the return of the summons valid, and the defendant excepted. The evidence set forth in the bill of exceptions on the motion to continue the trial of the cause on its merits until the next term, and also

the evidence on the trial of the cause on its merits, it is unnecessary to state, as in the view I take of this case it could not be retained properly for trial in the circuit court. The contract between Dryden the plaintiff and Gillison the clerk of the circuit court, referred to in the defendant Swinburn's notice to plaintiff Dryden, showed that the plaintiff Dryden was to pay to Gillison $50.00 per month for the office, he the plaintiff receiving all the fees and doing all the work.

A writ of error and *supersedeas* to the judgment of the circuit court in this case was granted and it has come before us for review.

*E. W. Wilson*, for plaintiff in error, cited the following authorities:

Powell on App. Proc. p. 350, §5; 2 W. Va. 422; 10 W. Va. 180; Powell on App. Proc. p. 262, §1; *Id.* pp. 118, 119, §§7, 8, 9; *Id.* p. 105, §10; *Id.* p. 267, §9; *Id.* p. 351, §8; *Id.* 352, §10; Acts 1877, ch. 50, §1; 1 Greenl. Ev., §§6, 7; 1 Abb. U. S. Pr. 336, 337; 22 How. 174; 7 Wheat, 534; 5 Curtis 316; 2 W. Va. 425; 4 W. Va. 380; Acts 1872–3, ch. 118, §§30, 31, 32; *Id.* ch. 13, §9; Leading Cases on Elections 144, 146, 150; 20 Gratt. 519; 13 Gratt. 139; 6 W. Va. 615, 692, 693, 710, 711; *Id.* 713, 718, 719; 4 Min. Inst. Part I. pp. 863, 870; Barton Law Prac. 397; 25 Gratt. 463; *Id.* 467; *Id* 938; Freeman on Judgments, §§116, 117; 11 Leigh 591, 594; 6 Gratt. 211, 212; 12 W. Va. 750; Mass. Dig. 116, §9; Min. Inst. 138; 16 Wend. 125; Const. W. Va., Art. II., §5; 4 Rand. 585, 588; 10 Rich. Eq. 38; 6 Cranch 182; 17 Pick. 70.

*J. H. & J. F. Brown*, for plaintiff in error:

1. Art. VIII §3 gives to the Supreme Court of Appeals appellate jurisdiction in civil cases, where the matter in controversy is of greater value or amount than $100.00·

And then extends the jurisdiction *downward* in particular cases and classes.

1879
Special Term.

Dryden
v.
Swinburn.

2. The statute, Code W. Va. chap. 123, §3, gives jurisdiction of writs of *certiorari*.

3. The judgment of a circuit court on a writ of *certiorari*, like a judgment on any other process is a civil case within the meaning of the Constitution and may be reviewed in the Court of Appeals on writ of error or *supersedeas*.

Acts 1872–3, ch. 17, §1 ; 9 Gratt. 323 ; 9 Leigh 119 ; 4 W. Va. 371 ; 2 H. & M. 1 ; 2 Wall. 346 ; Const. Art. VIII., §§2, 3; Acts 1877, p. 52 ; 2 W. Va. 285 ; 3 W. Va. 19 ; 2 W. Va. 422; 4 W. Va. 371; 8 W. Va. 274 ; 10 W. Va. 180; 2 Va. Cas. 268 ; 3 H. & M. 253; Code, ch. 123, §3 ; Code 1860 and R. Code 7, 16.

*E. B. Knight and William A. Quarrier,* for defendant in error :

1. This court has no power to review the judgment of the circuit court upon *certiorari*.—Constitution, Article VIII, section 6.

2. The power of this court is derived directly from the Constitution. It has no inherent or innate jurisdiction. Its jurisdiction is derived from a positive constitutional grant.

3. The Constitution omits to grant to this court power to review judgments in cases of *certiorari*.

4. When the Constitution intends to grant appellate jurisdiction over the subject of *certiorari*, it does so in plain language and in express terms, as in the 12th section of Article VIII, where the grant is made to the circuit court.

GREEN, PRESIDENT, delivered the opinion of the Court :

Certain preliminary questions must be disposed of first in this case. The first of them is : Has this court any jurisdiction in this case under our Constitution? The third section of Article 8 of our Constitution provides that the Supreme Court of Appeals "shall have appellate

jurisdiction in civil cases, when the matter in controversy, exclusive of costs, is of greater value, or amount, than $100.00." Under this clause has this Court jurisdiction *in* any case where the matter in controversy in the inferior court was an *office?* Or does the Constitution confer jurisdiction only when the subject of controversy is property which by the law is the subject of sale or purchase? The form or character of the remedy or proceeding in the inferior court cannot affect the jurisdiction of this Court under this clause of the Constitution. No matter what may be the form of the controversy, if the decision of the inferior court, if erroneous, has caused an injury to the plaintiff in error, or appellant, to an amount greater than $100.00, this Court will review the case at his instance. And as the injury to the party who brings the case before this Court, is the basis of our jurisdiction, it may happen that one party may have a right to have a case reviewed which the other may not. Thus in *Lee* v. *Lee*, 8 Pet. 44, it was held that on a petition for freedom the matter in dispute, so far as the petitioner was concerned, was his freedom, which was not susceptible of a pecuniary valuation, and therefore no writ of error would lie to a judgment against the petitioner, such writ not being allowed by the statute, "unless the matter in dispute should be of the value of $1,000.00 or upwards." But if the judgment had been in favor of the petitioner, a writ of error would have lain in favor of the defendant, if the slave had been worth over $1,000.00; for the matter in dispute, so far as the defendant was concerned, was the value of the slave.

Is the office of clerk of a court, the subject of dispute in this case, like freedom incapable of pecuniary valuation? It is true it cannot be sold or purchased; but this is not because it is incapable of being valued pecuniarily, but because the law from public policy declares that this office shall be inalienable. The law of Virginia formerly permitted the office of sheriff to be sold; and it was a very common thing to sell this office, and it had a pe—

cuniary value not more difficult of ascertainment than many other species of property. If an office has a salary attached to it, its value may be more readily ascertained; but in principle there can be no difference between an office having a salary attached to it and one that has not, but whose value consists in the fees of the officer. The sheriffalty, when it was authorized to be sold, was property having a value as such, though no salary was attached to the office. An office is a franchise, and as such property; and its value cannot depend upon whether the law from motives of public policy forbids or permits its sale. Real estate is property, and as such has a value, though at one time from public policy the common law forbade its sale. The matter in controversy must have a value which can be proved and calculated in the ordinary modes of business transactions, in order to give under this clause of our Constitution appellate jurisdition to this court. If the matter in controversy is incapable of this sort of valuation, this court under this clause of the Constitution can not take appellate jurisdiction.

A controversy about the custody of an infant child, for instance, is not capable of this sort of valuation; and if there were no other clause of the Constitution giving this court appellate jurisdiction in such a case, such jurisdiction would not be conferred by this clause. See *Barry* v. *Mercein et al.*, 5 How. 103; *De Kraft* v. *Barney*, 2 Black 714. But a controversy about an office is capable of this sort of valuation, and that too, whether a salary be attached to the office or its value arises from fees of office. Thus the mayoralty of Georgetown was held by the Supreme Court capable of this sort of valuation, and therefore, where the appellate jurisdiction of that court depended on the value of the matter in dispute, it took jurisdiction in a controversy about this office. See *United States ex-relatione Crawford* v. *Addison*, 22 How. 174. It is true this office had a salary attached; but when the proceedings in that cause were instituted, and when the case was decided, the salary either due or

earned by the services performed was insufficient in amount to give the court jurisdiction. The court regarded the office as the subject of controversy, and estimated its value, without reference to whether the services had been performed or not, as giving the court jurisdiction. The view that the office was of no value, but only afforded compensation for labor and services to be thereafter performed, was repudiated by the court in this decision, as I conceive.

In the *Columbian Insurance Co* v. *Wheelright et al.,* 7 Wheat. 534, where the controversy was about the office of director in the Columbian Insurance Co., the court decided that it had such a value as might give the court appellate jurisdiction ; and its value must be ascertained by the amount of the salary attached to the office. This is obviously the proper mode of estimating the value of a salaried office. But if no salary is attached to an office, it may nevertheless have a pecuniary value, to be estimated at what would be given for it, if the policy of the law permitted its sale.

It is insisted that the principles laid down in *Ritchie* v. *Munroe & Forest,* 2 Pet. 243, are not in accord with these views. This was a controversy about who was entitled to be appointed guardian. The amount of the estate of the minor was probably about $5.000.00, as the penalty of the guardian's bond was $10,000.00. The matter in dispute had to be of the value of $2,000.00 to give the Appellate Court jurisdiction. The question discussed at the bar seems to have been, not whether the office of guardian was such a subject-matter of dispute that the sort of pecuniary value could be attached to it such as was necessary to give the Appellate Court jurisdiction, but rather whether in that case " the amount in controversy was, or was not, sufficient to authorize an appeal." The appellants counsel contended, " that the right of appeal was complete, as the property which would come into the hands of the guardian would exceed $2,000.00." The appellee's counsel insisted " that

the pecuniary benefit of the appellant from the estate could not under any circumstances amount to $2,000.00." When the points discussed are considered, I think there is nothing in the opinion of Chief Justice Marshall, from which the inference can be drawn that he thought that in no case would on appeal lie when the matter in controversy was the office of a guardian; but that he thought it would lie, if the benefit of this office pecuniarily to the appellant was shown to be sufficient. He says : " In the present case a majority of the Court are of opinion that the Court has no jurisdiction in the case; the value in controversy not being sufficient to entitle the party by law to claim an appeal. The value is not the value of the minor's estate, *but the value of the office of guardian.* The office of guardian is of no value, except so far as it affords a compensation for labor and services thereafter to be earned."

As I understand this opinion, it very properly held that the office of guardian has a value, but that the proper mode of ascertaining this value was not to put it at the whole value of the minor's estate, but its value is the worth of the right to future compensation for labor, to be performed. In that particular case it was obvious this right was not worth $2,000.00. As under this clause of our Constitution appellate jurisdiction is given to this court, where the matter in controversy exclusive of costs is of greater value than $100.00, and as this jurisdiction is entirely independent of the form of action, it must happen in many cases from the form of the action that the value of the matter in controversy is not disclosed by the record. In such cases it must follow, that it may be shown by evidence *aliunde,* as by affidavits filed in this court or a certificate of the value in controversy according to the proofs in the court below; and either of these methods may therefore be resorted to in order to show the value of the matter in controversy. See *Pratt* v. *Fitzhugh et al.,* 1 Black 271 ; *Sparrow* v. *Strong,* 3 Wall. 97 ; *ex parte Bradstreet,* 7 Pet. 634; *United States* v.

*Brig Union,* 4 Cranch 216. In the present case the record expressly states, that " it was proven to the court that the office of clerk of the circuit court of Kanawha county is of greater value than $100.00" How it was proven does not appear ; but the contract made between W. E. G. Gillison and the plaintiff shows, that its clear monthly value was $50.00, which in the six years, the time for which the clerk is elected, would make its value $3,600.00. We must therefore regard the value of the matter in controversy as more than $100.00 ; and this Court has therefore appellate jurisdiction in the case.

It remains to enquire how this appellate jurisdiction in such a case as this must be evoked, whether by writ of *certiorari* or by writ of error. According to the general rule the writ of error is the appropriate remedy, when the proceedings are according to the course of common law, and the writ of *certiorari* when the proceedings are of a different character. Powell on Appellate Proceedings, ch. 8, §5, p. 350. The proceedings before the county-court were purely statutory and of a character entirely unknown to the common law ; and unless the mode of supervising them by the circuit court is controlled by statute, it would according to this general rule be by writ of *certiorari.* But it is insisted by the appellant, that as the writ of *certiorari* is a common law writ, the proceedings in this case before the circuit court, brought there by this writ were common law proceedings, and therefore according to this general rule, the review of those proceedings in the circuit court must be by writ of error from this court and not by *certiorari.* This position receives some countenance from the case of *Dowland* v. *Slade et al.,* 5 East 272, which was a writ of right originally brought in the court of the manor and forest of Gillingham, in which there was a judgment for the demandant, and the defendants presented a writ of false judgment returnable in the court of common pleas, assigning numerous errors. The court of common pleas reversed the judgment of the manor-court. And

1879
Special Term.

Dryden
v.
Swinburn

it was held a writ of error lay to the King's bench from the court of common pleas. But in that case the judgment of the court of common pleas was a judgment prescribed by the common law. On the other hand *Melvin* v. *Bridge*, 5 Mass. 205, was a case of a criminal prosecution originating under a statute before a justice. The penalty by statute was on conviction not only a fine, but a forfeiture of his fishing nets used in violation of law. An appeal was taken to the court of common pleas and the judgment before the justice reversed, and the defendant acquitted. The case was taken to the Supreme Court by writ of error, who quashed the writ, holding that a writ of error does not lie when the proceedings in any stage of them are not according to the course of common law, and the judgment given by the statute was not a common law judgment. But we need not decide whether at common law a writ of error in such a case as this would lie from the judgment of the circuit court of Kanawha county to this Court, because, as I understand our statute, a writ of error in such a case is authorized by statute-law.

The act of the Virginia Legislature, passed April 16, 1831, organizing circuit courts in each county, after allowing to them appeals as of right in certain specified cases, says: "And in all other cases wherein any person or persons shall think himself, herself or themselves aggrieved by *any judgment, proceeding or order* of any county or corporation-court (other than decrees, proceedings and orders thereof in chancery) such judgment, proceeding or order being final and in no way interlocutory, the said person or persons may prefer a petition for a writ of error or *supersedeas* to the Circuit Superior Court of Law and Chancery, &c." See supplement to R. Code, ch. 109, §30, p. 145. Though the proceeding in the county-court was purely statutory and not according to the course of common law, under this statute, if final, it is obvious that it might be reviewed by a writ of error, if it was not a chancery proceeding. And I do

not suppose that any final judgment or order of the county-court could be reviewed by the circuit court by writ of *certiorari*, merely because the proceedings in it were not according to the course of the common law.

The [same statute, §31, p. 147, provides for writs of error or *supersedeas* from certain specified judgments, decrees, orders and sentences of the circuit courts to the Court of Appeals, and among them "any other judgment, decree, sentence or order in any other case, wherein by the laws then in force writs of error or *supersedeas* lay from the Court of Appeals to the former Superior Courts of law." The law in reference to writs of error or *supersedeas* from the Court of Appeals to these former Superior Courts of Law, is found in ch. 69, §14 of R. Code of 1819, vol. 1, p. 231, and is : "Any party thinking himself aggrieved by the judgment of said courts, may obtain a writ of error thereto from the Court of Appeals, not of right but at the discretion of the Court." This seems to give a writ of error to any and all judgments of the circuit court to the Court of Appeals. The language is broad and would include a judgment rendered in a statutory proceeding and not according to the course of the common law, and applies as well to judgments, which by the common law could be reviewed only by writs of *certiorari*, as to those which could by the common law be reviewed by writs of error.

This I apprehend remained our law, both with reference to judgments of the county and circuit courts, till the formation of this State ; for though the language of the law was changed in the Code of Virginia of 1849, yet its meaning in this respect was not changed. This Code provided in ch. 182, §2 p. 682, that "a person who is a party to any civil case wherein there is a final judgment or order may present a petition for a writ of error or *supersedeas* to the judgment or order" except in a few specified cases which were not to be reviewed. This section applied equally to judgments of the county or circuit court, and its language is broad enough to include

every judgment or order, including one in a statutory proceeding, not according to the course of the common law. Thus under the Virginia statutes the writ of *certiorari* was unnecessary to be resorted to, as a general rule, in case of any final judgment or order of either a circuit court or county-court, at least in a controversy to which there were parties; but they might, and I suppose as a general rule must, be reviewed only by writ of error or *supersedeas*. And accordingly the Virginia Reports show no case of a judgment of the county or circuit court reviewed by writ of *certiorari*. This mode of review has been attempted in some such cases; but it has been disapproved. See *Hay's adm'r.* v. *Pistor*, 2 Leigh 707, *Tankersley* v. *Lipscomb*, 3 Leigh 813.

In the first Constitution of this State the county-courts ceased to exist. And while it was in operation the writ of error also was unknown, the mode adopted by statute for reviewing cases being appeals of right. The mode of taking appeals to the Supreme Court of Appeals was prescribed by statute. See Code of W. Va., ch. 135, p. 639. By the second Constitution of this State county-courts were again recognized as a part of our judiciary. See article 8, Session Acts of 1872–3, p. 25. On December 21, 1872, the Legislature passed an act regulating appeals, writ of error and *supersedeas*. The first section of this act provides that "a party to a controversy in any *circuit court* may obtain a writ of error or *supersedeas* to the Supreme Court of Appeals from a judgment thereon. First, in civil cases wherein the matter in controversy exclusive of costs is of greater value or amount than $100.00 wherein there is a final judgment," and in certain other cases not necessary to specify. This law was amended February 16, 1877; but this first section so far as above quoted was unaltered except that the words "wherein there is a final judgment" are omitted. See Acts of 1872–3, ch. 44, §1, p. 52. There is no provision in the Act of 1872–3, or in any amendment of it, designating the cases in which a writ of error may be taken from a

judgment of county-court. And the act organizing the circuit courts under our new Constitution is very different from that organizing the circuit courts of Virginia before referred to. Our act, ch. 15 of Acts of 1872–3, p. 43, provides that "The circuit courts shall have the supervision of all proceedings before the county-courts and other inferior tribunals by *mandamus,* prohibition and *certiorari.* ·They shall have appellate jurisdiction upon petition and assignment of error in all cases of judgments, dcrees and· final orders rendered by the county-court, and such inferior courts of record as may be hereafter established, under the provisions of the 12th section of article 8 of the Constitution, where the matter in controversy, exclusive of costs, is of greater value or amount than $20.00, except in certain specified cases." It will be observed that this act does not, as the Virginia act organizing the circuit court does, specify a writ of error as the mode of taking up cases to be reviewed. It is silent on this subject; though §15 of this act provides by whom writs of error, appeals and *supersedeas* are to be awarded.

As the Virginia law alway has allowed a writ of error or *supersedeas* to any judgment of a circuit court in a controversy in which there are parties which can be reviewed by the Appellate Court, I am forced to conclude that such is also our law under this statute, though it may be otherwise when the judgment is rendered in a case when there are no formal parties to the controversy in the circuit court. The language of our statute authorizing a writ of error or *supersedeas* is broad enough to include every such case; and I conclude every such case, even when a writ of *certiorari* would have been, by the rules of the common law, the mode of bringing the case before the Appellate Court, may be brought here by writ of error. ·But our statute being silent as to the cases in which the writ of error or *supersedeas* may be awarded when a judgment of the co unty-court is to be reviewed, I conclude that the common law mode of review is in,

force in this State, when a judgment of a county-court is to be reviewed; and therefore when a judgment of a county-court is reviewed by the circuit court, it must be done by writ of *certiorari* in such cases as by the common law could only be reviewed in that manner.

The judgment rendered by the county-court in the case before us was one of those cases, it being a novel case authorized by statute, the proceedings in which were all regulated by statute and were of a kind which was unknown to the common law and not according to its course. I conclude therefore that the circuit court properly reviewed the judgment of the county-court in this case on writ of *certiorari;* and that the review of the judgment of the circuit court is properly brought before us for review by a writ of error. In reaching this conclusion I have omitted to review the position of the counsel for the appellees in which they insist that the latter part of section 3 of Art. VIII. of our Constitution so qualifies and restricts the first portion of this article which gives appellate jurisdiction to this court " in civil cases when the matter in controversy exclusive of costs is of greater value or amount than $100.00," as to exclude this court from all appellate jurisdiction in every case where the proceeding of the court below was on a *writ of certiorari.* The language of this third section is:

" The Supreme Court of Appeals shall have appellate jurisdiction in civil cases when the matter in controversy, exclusive of costs, is of greater value or amount than $100.00; in controversies concerning the title or boundaries of land, the probate of wills, the appointment or qualification of a personal representative, guardian committee or curator ; or concerning a mill, road, ferry, or landing; or the right of a corporation or county to levy toll or taxes; and also in cases of *quo warranto, habeas corpus, mandamus* and *prohibition* and in cases involving freedom or the constitutionalty of a law. It shall have appellate jurisdiction in criminal cases where there has been a conviction for felony or misdemeanor in the circuit

court, and when a conviction has been had in an inferior court and been affirmed in the circuit court."

This section is by the appellee's counsel contrasted with the 12th section of Article VIII of our Constitution which says : " The circuit courts shall have appellate jurisdiction upon petition and assignment of error, when the matter in controversy, exclusive of costs, is of greater value or amount than $20.00 ; in controversies concerning the title or boundaries of land ; the probate of wills, the appointment or qualification of a personal representative, guardian, committee, or curator ; or concerning a mill, roadway, ferry or landing, or right of a corporation or county to levy tolls, or taxes; and also in cases of *habeas corpus, quo warranto, mandamus, prohibition* and *certiorari* and in cases involving freedom, or the constitutionality of a law ; and in all cases of conviction under criminal prosecutions in said court."

By this clause appellate jurisdiction is expressly given to the circuit court in all cases of *certiorari;* and the appellee's counsel insists that as in the third section of Article VIII of the Constitution above quoted, appellate jurisdiction is given the Supreme Court in all the cases of extraordinary remedies named in this eighth section excepting only *certiorari,* which is omitted in the third section, that it is thus apparent that the third section did not intend to confer on the Supreme Court appellate jurisdiction in *any* case of *certiorari.* This, it seems to me, is clearly a *non sequitur.* It is obviously true it does not, as the VIII Article did, confer appellate jurisdiction in *every* case of *certiorari,* but the first portion of section 3 had expressly conferred on the Supreme Court appellate jurisdiction "in civil cases where the matter in controversy exclusive of costs is of greater value than $100.00." This clearly included cases of *certiorari* where the matter in controversy, exclusive of costs, exceeded $100.00. For a *certiorari* is certainly a *civil case.* And while the rest of the third section confers on the Court appellate jurisdiction in certain specified cases, though the amount

33

in controversy be less than $100.00, there is certainly in it nothing to take from the Court appellate jurisdiction in all civil cases where the amount in controversy, exclusive of costs, including *certiorari* cases, exceeds $100.00.

The difference between the eighth and third sections is that the eighth section confers appellate jurisdiction in all *certiorari* cases, while the third section only confers appellate jurisdiction when the amount in controversy exceeds, exclusive of costs, $100.00. The latter clauses of both sections enlarge the appellate jurisdiction of the respective courts. This enlargement is quoted under the eighth, then under the third section. Butn either of them can be interpreted to limit or restrict the appellate jurisdiction conferred expressly by the first clause in each section. This seems to me the obvious construction of these provisions of our Constitution, that it is the true construction is rendered obvious from comparing the third section of Article VIII of our Constitution, with the 11th section of Article VI of the Constitution of Virginia, found in the Code of Virginia of 1860, p. 53. The provision of our Constitution conferring appellate jurisdiction on the Supreme Court was obviously taken from this provision of the Virginia Constitution, the language used being almost the same. Its language is: "It shall have appellate jurisdiction except in certain cases," and then it proceeds: "It shall not have jurisdiction in civil cases where the matter in controversy, exclusive of costs, is of less value or amount than $500.00, except in controversies concerning the title or boundaries of land, the probate of a will, &c.," using the language of our Constitution and omitting, as it does, *certiorari*. This conferred jurisdiction generally in civil cases where the amount in controversy exceeded a certain sum, except that in certain cases specified, the amount in controversy need not exceed the named sum. Our Constitution I think obviously has the same meaning.

The next enquiry is : Did the circuit court err in granting a writ of *certiorari* on a petition sworn to without giving notice to the opposite party and without a rule to show cause against its being granted ? The practice in different States is not uniform. Thus in Massachusetts it is discretionary with the court, to which a petition for a writ of *certiorari* is presented to review the proceedings of an inferior court, to direct or not, as may be deemed proper, notice to be given to the opposite party in interest before acting on the petition or granting the writ. But by their practice notice to show cause against the issuing of the writ must be given to the tribunal to which the writ, if granted, will be addressed. See *Rutland* v. *County Commissioners*, 20 Pick. 71, *Farmington River Water Co.* v. *County Commissioners*, 112 Mass. 206 ; *Tewksberry* v. *County Commissioners*, 117 Mass. 563 ; *Worcester & Nassau Railroad* v. *Railroad Commissioners*, 118 Mass. 563. But this practice does not appear to have prevailed generally. Thus in *Gardner* v. *the Commissioners of Highways of the town of Warren*, 10 Hun. 183, Cheppin, Judge, says in delivering the opinion of the court : "Motions are frequently made both at general and special terms for the allowance of common law writs of *certiorari*. My own recollection is, that such motions have generally been made *ex parte*. It is not necessary to give notice of the application to the court for the allowance of the writ."

The more general rule adopted seems to be that it is discretionary with the court, to whom an application for the writ of *certiorari* is made, to require notice to the parties interested, or to have a rule issued to show cause against the issuing of the writ, as in the particular case it may or may not be deemed necessary. Thus the rule in North Carolina is thus stated by Henderson, Judge, in *Cherry* v. *Slade*, 2 Hawks 402. " A *certiorari* is granted on facts uncontroverted or apparent on the record or papers before the court; but a rule is proper when the application is made on facts not so apparent." But as in North Caro-

lina they "in all cases permit the facts to be controverted when the *certiorari* is returned," (See Henderson, Judge, 2 Hawks 402), it is there more usual to require a rule before the writ of *certiorari* is awarded; but this is not deemed essential. But as a new trial of the case is then had on the writ of *certiorari*, this trial will not be proceeded with, till the adverse party has had an opportunity to object that the writ had been improvidently awarded. *Chambers* v. *Smith*, 1 Haywood 424.

In the case of *State* v. *Morris Canal*, 7 Halst. (12 N. J. Law) 420 the court requested an argument of this point. The counsel for the party asking the writ without notice or rule said, that in England notice was required only in two particular cases. One of these cases was when the *certiorari* asked was to remove an indictment out of London or Middlesex into the King's Bench, see 5 Vin. 351 (H.) pl. 7; Raym. 74. The other was under 12 Geo. II., ch.18, §5, requiring notice of six days in certain cases 4 Vin. 353; 1 Bac. 367 (D.); 5 T. R. 279. The opposite counsel relied on 18 Eng. C. L. Rep. 278. The court decided that a notice was not necessary. It said : "We are of opinion however, that the court may in their discretion grant a *certiorari* in the first instance upon motion, or if from the peculiar circumstances of the case they should consider it necessary, direct a rule to show cause. This is a novel case of great importance, many questions may arise as to the most correct mode of proceeding, the court therefore thinks it proper to direct a rule to show cause."

The views of the law on this point as laid down by the Supreme Court of New Jersey seem to me just and reasonable. Applying the law to the case before us, I do not think the court erred in awarding the writ of *certiorari* in this case without notice to Thomas Swinburn, and without a rule to show cause. The petition was sworn to, and a full copy of the record of the proceedings in the county-court to be reviewed accompained the petition. This record was very brief and simple and presented mere-

ly a law question to be considered by the court. I do not see that a notice to Swinburn or a rule on the county-court before the issuing of the writ would have served any useful purpose. It would only have produced delay in a case where the prompt action of the court in finally determining the matter in controversy was peculiarly important to all parties. Neither the county-court nor Swinburn from the nature of the case, if notified, could have presented any matter to the court to affect its judgment on the question, whether the writ of *certiorari* should be awarded, which the petition did not itself present. It was however necessary to notify Thomas Swinburn of the pendency of these proceedings before the court acted upon the writ of *certiorari* after its return. He was a party who was deeply interested in the result of this writ, and it was essential to notify him of the proceeding, though he was not a formal party to it. See *Johnston, Supervisor* v. *Hanna*, 1 Wright (Ohio) 138 ; *State* v. *Joseph Giberson*, 2 J. S. Green (14 N. J. ) 388.

It is claimed in this case that the summons, directing Thomas Swinburn to be notified to answer this writ and show cause why the prayer of the petition should not be granted, was not properly served. As Swinburn was not a formal party to this proceeding, I doubt whether the circuit court ought to have considered or regarded any mere formal or technical objections to the mode of the service of this process. It is very probable that to sustain the proceeding it would be only necessary to show that he had notice of its pendency ; and though the service of the summons had been technically defective, yet if he had such notice the court might properly proceed to decide the case, as he was not a formal party to it ; but it is unnecessary to consider or determine whether it was as necessary to serve a summons on him in as legal and formal a manner, as if he had been a formal party to the proceeding, as on a consideration of the evidence I am satisfied he was formally served with a copy of this notice in just the manner in which

the law required him to be served with process in a suit in which he was a formal party. The return of the summons was, that "the process was served on the defendant Thomas Swinburn on the 16th day of December, 1878, by posting a copy thereof, on the front door of the dwelling house of Thomas Swinburn, his usual place of abode, said Swinburn not being found there, and no other member of his family being there found." This was a good service of this process if the facts stated in it were true. But Swinburn not being a formal party to this proceeding, and this process amounting to nothing more than a notice, upon the principles decided by this Court in the case of *Bowyer* v. *Knapp & Martin*, decided at the present term of this court, the falsity of this return could be proven by evidence *aliunde*. An effort was made to show its falsity in fact. But in my judgment this effort was a failure. I need not review this evidence. It is substantially set forth in the statement which I have made of this case. It satisfies my mind that this return was true.

On Saturday the 14th of December, 1878, the first summons of Thomas Swinburn was issued by order of the court. At that time he and his family were, it is expressly proven, abiding at his residence and they were there that night; this process was returned "not served for want of time :" and on Monday the 16th day of December, 1878, an *alias* summons was issued on which the above return was made. The evidence satisfies my mind that to avoid a service of the process of the court, he on Monday morning left his residence and caused his family to be removed therefrom ; that this removal was, as shown by the occasion of it, merely temporary ; and that when this process posted up at the front door of his residence it was then his usual place of abode. It was in the language of *Capehart, adm'r*, v. *Cunningham, adm'r*, 12 W. Va. 751, " his usual place of abode *eo instanti* the summons was served." For the temporary absence of himself and family could not prevent it from

being his *then usual place of abode.* For this mode of service by posting a copy at the front door of his usual place of abode, as provided by ch. 50, §32, of our Code, was expressly intended for such a case when no member of his family was found at his usual place of abode. I have reached this conclusion from the evidence in the record ; but it is strongly confirmed by the fact, that if he had any other place of abode on the 16th day of December, 1878, the defendant could with perfect ease have proven it by himself or any member of his family. Yet no such proof was offered.

I conclude therefore that the circuit court had, in the manner it adopted and at the time it acted, a right to review the judgment of the county-court.

Was this judgment of the county-court erroneous ? And first, was the notice, which was duly served in time in this case, sufficient on its face to give the county-court of Kanawha county jurisdiction of the case ? Section 30 of ch. 118 of Acts of 1872–3, p. 354, provides that "any person intending to contest the election of any officer enumerated above (which enumeration includes the clerk of a circuit court of a county) shall, within ten days after the result of such election is declared, give him notice in writing *and a list of the votes he will dispute, with his objections to each, and of the votes rejected for which he will contend.* If the contestant objects to the legality of the election, or the qualifications of the persons returned, the notice shall set forth the facts on which such objection is founded, and he shall append to his notice an *affidavit* that the matters therein set forth are true according to his knowledge and belief." The notice in this case shows on its face that John Dryden, who signed it, was a contestant for this office, that is, that he claimed he and not the party notified, Thomas Swinburn, had been elected clerk of the circuit court of Kanawha county. The notice however did not give a list of the votes which the contestant, Dryden, intended to dispute.

with his objections to each, or a list of the votes rejected for which he would contend, which it is insisted by appellant's counsel was essential to make the notice good. This is certainly true, if the contest had been based on the ground that illegal votes had been received, or legal votes rejected; but if the contestant does not claim that any legal votes were rejected, or any illegal votes received, it would of course be impossible to furnish any such lists, and it would obviously be unnecessary, unless the contest was confined by the statute to cases in which such legal votes had been rejected, or illegal votes had been received. The statute, however, on its face evidently contemplates other grounds on which the contest may be based. Thus it expressly provides that the contestant may object to the legality of the election; and this may be the whole basis of his contest. Of course if the election was declared to be illegally held, which conclusion and judgment of the court is evidently contemplated as possible, then the contestant could not possibly be declared by the court as elected. And yet he may, the statute says, allege this as the ground of the contest, and it follows necessarily that the notice need not set out facts which show that the contestant is entitled to the office, as the appellant's counsel insists it must in every case.

He says that unless he shows facts which entitle him to the office, he does not show any ground for instituting this proceeding, as it is intended to redress only a private wrong in depriving him of an office to which he is entitled. But obviously the purposes of this act are misunderstood; for if he can base this notice, as the statute says he may, on the illegality of the election, this very ground shows that he is not and can not be entitled to the office. But though the contestant neither objects to the admission of illegal votes, the rejection of legal votes nor the illegality of the election, he has still by the words of this statute a right to contest the election, because he objects to the qualifications of the person who has been returned elected.

1879
Special Term,

Dryden
v.
Swinburn.

. This is the sole ground according to the notice of the contest in this case; and in that case the statute requires that the notice shall set forth the facts on which this objection is based. This is done explicitly in this notice; and these facts are stated to be that "at the time of said election, October 8, 1878, you were not, and never have been, entitled to vote in this State; and by express provision of the Constitution of this State you could not be elected to said office at said election."

It is said by appellant's counsel that a writ *quo warranto* is the only mode by which the *public* can oust a usurper from office; and that this statute only provides the manner in which a person, who is entitled to the office, may claim his right; and that as he in this proceeding is suing for the office, he must show a complete right to it in himself as in ejectment; and that it cannot be that any voter can institute this proceeding, as the statute shows it must be instituted by a candidate for the office, a contestant, and from this the inference is drawn that the party instituting this proceeding must in his notice allege facts that show, if true, that he is entitled to the office. The falsity of this position is shown by the absurdity to which it leads. For as the statute permits the contestant to allege the illegality of the election as the ground of the controversy, and in such case requires that the facts, which show the election to have been illegally held, shall be stated in the notice, it is obvious that so far from it being required to state facts showing that the contestant is entitled to the office, it may show facts that show it is impossible for him or any one else to be entitled to the office under this election. All that can possibly be required is that the party giving the notice should be a candidate for the office. I do not say that this is necessary, but it may be, and if so, this notice complies with this requisite as it says: "that he will claim to be himself, duly and legally elected to said office at said election."

The notice seems to me to be clearly a legal and suffi-

cient notice, if the day this notice was returnable, November 1, 1878, does not render it illegal. The county-court on November 1, 1878, the return day of this notice, docketed the same, and the defendant demurring to the jurisdiction of the court, it sustained the demurrer and dismissed the notice. This action was doubtless based on the idea that the notice could not be returnable to November 1, 1878, as that was a day in the October term of the county-court of Kanawha county. The 32d section of chapter 118 of Acts of 1872–3, page 355, provides that the county-court "at its November term, or if no term be held in the month of November at the next term thereafter may hear such evidence as may be brought before it in such a case," that "they may continue the hearing from time to time but not beyond the time designated for such officer to qualify," that is in this case, within sixty days from the time he was declared elected. The 30th section of this Act had declared : "In all contested elections the county-court shall be the judge of the election, qualification and returns of its own members, and all county and district officers." It is obvious this section gave the county-court general jurisdiction of such a case as is presented by this record, and under it the notice might obviously be returnable to any day in any term of the county-court; and under it a notice returnable to a day certain in the October term of the county-court would be a good notice. . Does the fact that a subsequent section requires the case to be *tried* at the November term vitiate the notice ? It seems to me clearly not. There is no sort of inconsistency in the two sections, the first gives the county-court general jurisdiction of the cases ; the second states when the case is to be tried. Having general jurisdiction of the case, if the notice was returnable to a day in the October term, it may perhaps under the statute have been the duty of the court simply to have docketed the case and continued it for trial to the next term. Though their duty to continue the case might well be doubted, as the obvious spirit of the stat-

ute is to have the earliest possible trial of the case. But if we admit that it could not be tried by reason of this 32d section earlier than the November term, there is certainly nothing in either the words or spirit of this act to prevent its being docketed at some day in the October term, so as to be ready for trial at the first day of the next term. So far from this being in conflict with the spirit of the act, it is obviously with its spirit, and is promotive of the 'earliest possible trial of the case. If not so construed, the contestant might be deprived of all opportunitiy to contest an election. There might be a term of the county-court in December, which might be a fiscal term, at which the contested election case could not be legally tried; and if, because it could not be then tried, it could not be docketed, and the notice could only be made returnable to the January term succeeding the election, it could not be then docketed, because the 32d section provides that it must be tried before that time ; and I apprehend that it modifies the general jurisdiction of the county-court to the extent of forbidding by impli- cation, that a contest can be originated by a notice sub- sequent to the time in which the law provides that the case ought to be tried. But I cannot see any reason why the notice may not be given to a day prior to the time it may be tried, and if so given, why it may not be dock- eted and continued till by law it may be tried. There is, it seems to me, nothing in either the letter or spirit of the law to forbid this.

It remains to enquire what judgment in this case should have been rendered by the circuit court, the judg- ment of the county-court dismissing the proceeding for want of jurisdiction being erroneous. The writ of *certio- rari* in England is used generally to remove a cause from an inferior court to a superior court for trial, when the inferior court is proceeding irregularly or without jurisdiction of the subject ; and this being the character of the proceeding, if the writ is sustained, the case is re- tained generally for trial *de novo* in the superior court,

*1879 Special Term.*

*Dryden
v.
Swinburn.*

though it is after the reversal of the irregular proceeding in the inferior court sometimes for special reasons applying to the peculiar character of the case sent down for trial *de novo* in the inferior court. See Tidd's Practice, page 412. The writ of *certiorari* was also used in England sometimes not to remove a case pending in an inferior to a superior court for trial, but as a means of supervising and reviewing a case in an inferior court after a final judgment in the inferior court. I am not prepared to say whether, when the writ was used strictly as an appellate proceeding when the inferior court had rendered a final judgment, the superior court on reversing the inferior court ever retained the case for trial *de novo* in the superior court.

On this subject Justice Scott in delivering the opinion of the court in *Carroll* v. *Crawford County*, 6 English (Ark.) 614 says: "We are aware that in several States the practice has been adopted of giving a new trial (*de novo*) in all cases removed by *certiorari*, after judgment, from an inferior to a superior court, but this does not seem warranted by the uniform course of practice in England. There, where cases are thus removed before judgment in the inferior court, the proceeding is *de novo*, so that if the case is at issue when removed, the plaintiff must declare *de novo* (Tidd's Practice 349-350). But there is no warrant in the practice of the English courts for a trial *de novo* after judgment in the inferior court; and this is doubtless the foundation of the practice long established in this State to take no other action in such case than to quash or affirm (*County of Pulaski* v. *Irvin*, 4 Ark. 487) regarding the process, when running to a court moving in a new course different from the common law, as performing the same functions as a *writ of error* running to one moving in the course of common law. *Gromvelt* v. *Burwell*, 1 Salk. 263."

If the court had in that case reversed the circuit court, they hold that the proper judgment would have been to reverse and annul the judgment and award a new trial in

the court below; but there being no error in that case in the judgment of the county-court, they hold that on the case being brought before the circuit court the judgment of the county-court ought to have been affirmed. The circuit court instead of rendering a judgment of affirmance reached, as it supposed, the same result by dismissing the *certiorari* and striking it from its docket; this judgment of the circuit court was therefore reversed and cause remanded with instructions to render a general judgment of affirmance.

So far as I have been able to ascertain, the State Supreme Courts generally, who upon the reversal of a final judgment of an inferior court on a writ of *certiorari* by a superior court have decided that the case should be tried *de novo* in the superior court, have so held, not because this was common law, but because by the statutes of these States such a trial in the superior court was in such case authorized. Thus it was decided formerly in Alabama in cases of judgments of inferior tribunals brought before the circuit court by writs of *certiorari* and reversed, that they could not be tried *de novo* in the circuit court. See *Durham* v. *Carter & Carrol*, 2 Stew. 497; *Aldridge* v. *Hightower*, 4 Porter 418; *Bell* v. *Killcrean*, 11 Ala. 685. But on February 12, 1850, Session Acts, 81, it was enacted " that in all cases of forcible entry and detainer and unlawful detainer, which may be removed to any circuit or county-court pursuant to law, shall be tried *de novo*." This act changed the law in the cases removed to the circuit court after its passage, but did not affect the cases removed by *certiorari* before its passage and which were pending in the circuit court at the time of its passage. See *Mahan* v. *Leister*, 20 Ala. 162.

So in Indiana, when a judgment of a justice of the peace was reversed on *certiorari* by the circuit court, it was retained in the circuit court for trial. But in *Burton* v. *Freeze*, 1 Carter 123, this practice is by the court based on the Indiana statute found in their Revised Statutes p. 895. In *Fore* v. *Fore*, 24 Ala. 484, the court

expressly say : " A *certiorari* only brings up the record of the proceedings in the inferior court to the superior court and the cause must be heard in the superior court on the record alone. There can be no trial *de novo*, unless the statute has so directed; otherwise the judgment on *certiorari* is either that the proceedings below be quashed, or that they be affirmed, 8 Yerg. 102; 5 Mass. 423."

So in *Weigland* v. *Malatester*, 6 Cald. (Tenn.) 362, it was decided : "That when a cause is brought to a circuit court by *certiorari*, it is required of the court by statute to render a final judgment; and therefore the court held that by the true construction of this statute if the circuit court in such case reversed the inferior court a trial, *de novo* must be had in the circuit court." The court admits that without this statute no trial *de novo* could be had in the circuit court. From the case of *Hill* v. *Faison*, 27 Texas, 430, it appears to be also the practice in that State in cases brought up to a superior court from decisions of a justice to try the case *de novo*; but it does not from this case appear whether this practice is based on the statutes of that State or not. There is nothing in the case to indicate that the court regards such practice as based on the common law. I find however one case in which the Supreme Court of Pennsylvania upon common law principles held, in a very novel proceeding in this country, an *assize of nuisance*, a proceeding which was antiquated at that time, upon a *certiorari* to bring it before the Supreme Court that they had the power to resummon a jury to try the case. In this country however the writ of *certiorari* is very rarely used as a means of supervising and controlling inferior courts, till after judgment. It is not used here to remove a case pending in an inferior court to a superior court for trial; but it is as a general rule used here as strictly a proceeding in error after the final judgment of the inferior court. And being so used, the practice in writs of error is usually applied to cases brought before a Superior Court by *certiorari*;

and therefore a trial *de novo* in the superior court is not allowed, unless it is authorized by statute. See *Farming River Water Power Co.*v. *County Commissioners*, 112 Mass. 213 ; *Lowell* v. *County Commissioners*, 6 Allen 131 ; *Commonwealth* v. *West Boston Bridge Co.*, 13 Pick. 195, 196 ; *People et. al.* v. *Ferris* Tiffany (36, N. Y.) 218; *Hopkinton* v. *Smith et. al.*, 15 N. H. 152; *Jefferson County* v. *Hudson, sheriff*, 22 Ark. 595 ; *Harvy* v. *Herritage*, 2 Haywood 38 ; *Owens* · v. *State*, 27 Wis. 456 ; *Gilmer, assignee* v *Warren .&· Scarborough*, 17 Ga. 426 ; *Haller, Seaver & Burbank* v. *Bluin & Harris*, 56 Ga. 525 ; *Leonard* v. *Peacock*, 8 Nev. 161 ; *Smith* v. *Pratt & Barber*, 13 Ohio 550 : *Commissioners of Sonora* v. *Supervisors of Carthage*, 27 Ill. 143.

As the writ of *certiorari*, when not used as an auxiliary process, is sometimes used in this country as in England for other purposes than as merely an appellate proceeding, as in the case of *Machaboy et al.* v. *Commissioners*, 2 Va. Cas. 268, the rules governing the proceedings and practice in writs of error have not in all respects been universally adopted, when the writ of *certiorari* is used as a merely appellate proceeding. Thus the cases above cited, while they all agree that a trial *de novo* can not be had in a superior court in a case brought before it by *certiorari*, yet they by no means agree as to the judgment which may be rendered. They agree that if no error is found in the proceedings in the inferior court, its judgment should be affirmed ; but they differ on the judgment to be rendered, if the judgment of the inferior court is found erroneous. Some holding in such a case all that the superior court can do is to render a judgment reversing the judgment of the inferior court; and others holding it may go further, and render such judgment as the interior court ought to have done, as in cases brought before the superior court by writ of error, that is, they may modify the judgment of the inferior court or reverse it *in toto*, and enter up a new judgment, or remand it to the inferior court for trial.

1879
Special Term.

Dryden
v.
Swinburn.

This latter practice would certainly seem to be far the most convenient, especially where the inferior court is a court of record, but there are highly respectable authorities which deny the superior court the right, unless so authorized by statute, to do more than simply to reverse or annul the judgment of the inferior court. See *Farming River Water Power Co.* v. *County Commissioners*, 112 Mass. 213, and other Massachusetts cases; *People et al.* v. *Ferris*, 36 N. Y. 218; *Hopkinton* v. *Smith et al.*, 15 N. H. 152; but the weight of authority is in favor of the power of the superior court in a case brought before it by *certiorari* to do more than simply to affirm or reverse the judgment of the inferior tribunal, and is in favor of the authority of the superior court to affirm the judgment below, or to reverse it and remand it to the inferior court, or to modify its judgment, and in short to enter up such judgment as the court below ought to have done, as in cases brought up by writ of error. See *Jefferson County* v. *Hudson, sheriff*, 22 Ark. 601; *Harvy* v. *Herritage*, 2 Haywood 38 (top page 201); *Leonard* v. *Peacock*, 8 Nev. 161; *Smith* v. *Pratt & Barber*, 13 Ohio 549.

In the latter case, Lum, C. J., says: " The defendants object to any examination of these proceedings, because they are pending before us by error and not by *certiorari.* The distinction between the respective offices of these writs is well marked in England and in some of the States; but in our practice the difference in the forms of these writs, the mode of allowance, the process, the assignment of error and *the judgment* is so slight that it has almost disappeared ; and although no case is known, or believed to exist, where *judgments proper* have been reviewed by *certiorari*, or where the proceedings of other public bodies, except courts of common law, have been carried up by writs of error, yet the acts of courts of record, other than their common law proceedings, are daily examined by writs of error ; and several reported cases show the existence of the practice. 4 Mass. 670; 9 Mass. 465 ; 4 Pick. 125 ; Wright 673; 7 Ohio 130, 178 ; 9 Ohio 142."

{. The judge was doubtless right in holding that in this country there was now but little difference between the proceedings in writs of error and writs of *certiorari;* and in most of our courts there is no difference in the judgments entered in these cases; but I think he was wrong in saying that in this country, except when authorized by statute, " acts of courts of record, *other than common law proceedings,* may be examined by writs of error." And this view of the judge was subsequently expressly condemned by the Supreme Court of Ohio in *Baxter* v. *Columbia Township,* 16 Ohio 56, where it was decided that a writ of error does not lie to reverse the judgment of a court of common law pleas in a case arising under an act for the maintenance and support of illegitimate children; but a writ of *certiorari* was the proper proceeding, the judgment being rendered in a proceeding not according to the course of the common law. The Massachusetts cases do not sustain the position for which they were cited.

It seems to me that there is no sound reason why, in a case brought before a superior court by *certiorari* from the judgment of an inferior court of record, the judgment of that court should be confined to simply an affirmance or reversal of the decision of the inferior court of record; and in such case it seems to me that both reason and authority sustain the position, that the superior court ought, in case of a reversal of the judgment of the inferior court, either to remand the cause to be further proceeded with, or enter such judgment as the court below ought to have entered, as is done in a case brought before it by writ of error. No sound reason can be assigned why the case should not thus be fully disposed of in either case. The record alone is to be the basis of the judgment in either case; and I cannot see why the scope of the judgment of the superior court, when the case is brought before it in its appellate character, should not be as great when the proceedings are not according to the course of the common law, as in the case where it is in accordance with

35

the course of the common law. The circuit court should therefore have reversed and annulled the judgment of the county-court dismissing the case; and the plaintiff should have been adjudged his costs in the circuit court; and the case should have been remanded to the county-court to be proceeded with according to law and the statute in such case made and provided, unless there be some statute authorizing the retention of the case tn the circuit court for trial. The only statute allowing a retention of a case in the circuit court for trial, where there has been a final judgment of a county-court brought up for review, is the 22d section of ch. 17 of Acts of 1872–3, p. 63, which though it uses the broad language " when any judgment of the county-court is reversed or affirmed the cause shall not be remanded to the county-court, but shall be retained in the circuit court and be proceeded in there,"yet it has no application to a case reversed on a writ of *certiorari* as this section is in a chapter whose title is an act regulating appeals, writs of error and *supersedeas ;* and all the sections of the act refer only to such cases. This section therefore applies only to cases reversed which have been brought before the court by writs of error.

It may be said such judgment can not now be entered, because the statute, ch. 118, §32 of Acts of 1872–3, p. 355, provides that the county-court may "at its November term, or if no term be held in the month of November at the next term thereafter, hear the evidence; that they may continue the hearing from time to time but not beyond the time designated for such officer to qualify. The court shall declare the result and cause the same to be entered upon the records of the court." The time when the clerk of the circuit court of Kanawha county elected in October, 1878, should have qualified was within sixty days from the time he was declared elected ; and this time having pasted, the county-court cannot now hear the evidence or decide the case. I do not so understand this law. It would be strange indeed, if the failure of

the court to decide the case in a certain time could be regarded as a forfeiture of the plaintiff's right to prosecute his case. The language of the law I have quoted must be regarded as directing the county-court not to continue the case beyond the specified time ; but if they had in violation of their duty done so (which they have not in this case) it could not operate a forfeiture of the plaintiff's right by the statute being interpreted to prohibit the court from deciding the case after that time. Their failure to perform their duty and to decide the case before that time could not be a reason why they should, much less must, still further fail in their duty by never deciding the case. By the Constitution as well as by the 30th section of this act they were expressly made the judges of the qualification and returns of the circuit clerk of their county. And it was thereby made clearly their duty, when a contested election case for such office was brought before them, to decide it. The 32d section directs them to decide it promptly ; but their failure to do so can not release them from their obligation to decide this as all other cases brought before them, over which they have jurisdiction.

It was, according to my view, improper for the circuit court to hear the evidence or decide the case on its merits. I need not therefore decide whether, if this had been its duty, it ought on the motion of the defendant to have continued the trial of the case on its merits till the next term. Of course it was not only proper, but the obvious duty of the circuit court to decide at that term the only question properly before it : whether the county-court erred in dismissing the case. Nor can there be any just ground of complaint that the summons served on the defendant required him to appear in a very brief time. He could not require any time to prepare the case for trial, as it could by that court only be heard on the record, and his counsel are supposed to be prepared to maintain the judgment of the county-court in their favor

1879
Special Term.

Dryden
v.
Swinburn.

at all times, and I do not understand that the counsel complain that sufficient time was not allowed them to prepare their argument and argue the case before the court.

All of the proceedings of the circuit court in this case after the 19th day of December, 1878, when it vacated and annulled the judgment of the county-court, were irregular, as the case should then have been remanded to the county-court ; and all the proceedings of the circuit court after that time must be annulled and set aside ; and the judgment of the court in retaining the cause, as well as all the subsequent proceedings and judgments of the court, must be set aside and annulled ; and this Court proceeding to render such judgment as the circuit court ought to have rendered, doth vacate, set aside and annull the judgment of the county-court sustaining the demurrer and dismissing the plaintiff's notice, and doth remand this case to the circuit court of Kanawha county with directions to remand the same to the county-court of Kanawha county to hear such legal evidence as may be brought before it, and otherwise proceed with this case according to the principles laid down in this opinion, and further according to law and the statute in such case made and provided, and declare the result, and cause the same to be entered upon the records of their court.

JUDGES MOORE AND JOHNSON concurred in this opinion of JUDGE GREEN ; and JUDGE HAYMOND concurred in the conclusion reached ; and all the Judges concurred in the syllabus.

JUDGMENT REVERSED.     CAUSE REMANDED.