# CHARLESTON.

BOGGESS v. BARTLETT.

Submitted June 11, 1912.   Decided April 29, 1913.

1.  MINES AND MINERALS—*Lease Contract—Performance of Conditions.*

    An agreement by a lessor with the lessee to procure a release of the lien of a deed of trust upon the premises by an assignee of the note representing the debt so secured, as a condition precedent to payment of part of the purchase money of the lease, is not discharged or performed by the procurement of a release of the lien by the original creditor.   (p. 380).

2.  SAME.

    Nor is the effect of the agreement destroyed or performance of the condition excused by proof, in an action for recovery of the deferred purchase money, of payment of the debt secured by the deed of trust to the original creditor before assignment, or its extinction by merger in the hands of an assignee. (p. 381).

3.  ACTION—*Premature Commencement—Validity.*

    In such case, the surrender of the lease, under a provision thereof permitting it, after the commencement of the action but before trial thereof, does not warrant recovery.   It is requisite to the maintenance of a suit that there be a cause of action at the date of its institution.   (p. 381).

4.  CONTRACTS—*Actions—Defense—Waiver of Breach.*

    A party to a contract causing, by his own default, a breach of one of its subsidiary or collateral provisions, the purpose of which was to suspend the time of payment of money by him to the other, is deemed to have waived the benefit thereof and cannot rely upon the breach as a defense to an action for the money.   (p. 381).

5.  SAME—*Waiver of Breach.*

    In such case if the collateral or subsidiary agreement is separable from the main contract and was made for indemnity of the defendant, he is deemed to have elected to forego its benefit and rely upon the main or general contract for compensation in damages for violation of plaintiff's obligation under it. **(p. 382).**

Error to Circuit Court, Marion County.

Action by Harriett A. Boggess against Fred W. Bartlett. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*W. S. Meredith,* for plaintiff in error.

*Harry Shaw,* for defendant in error.

POFFENBARGER, PRESIDENT:

The judgment here complained of is for the amount of a check, $1,250.00, representing part of the purchase money of a lease for oil and gas purposes, executed by the plaintiff to the defendant, and interest on said sum. It rests upon a verdict which was objected to on several grounds, all of which the court held untenable. The case was tried in the intermediate court of Marion county whose judgment was affirmed by the circuit court of said county, from which the judgment comes here on a writ of error.

By agreement of the parties, admitted by the plaintiff as well as proved by the evidence, the money represented by the check, was not to come immediately into her hands, but was either to remain in the hands of the defendant, or in the hands of a depositary, until the plaintiff should free the lease of a claim to a prior lien on the land by one C. A. Snodgrass, as assignee of a note secured by a deed of trust. As to the nature or character of the deposit, there is controversy, but the agreement to make a deposit with W. S. Engle, until the lien should be released or the cloud dissipated, is admitted. To consummate the deal, the defendant sent the plaintiff a check along with another and two notes by his agent. When this check was examined it was found to have been written for $1,050.00 instead of $1,250.00. Thereupon the agent drew another in the name of his principal for the correct amount, $1,250.00, which he delivered to the plaintiff along with the other check and the notes. This check was exchanged at a bank in Fairmont for a certificate of deposit in an equal amount which was forwarded to Engle, the depositary. By order of the defendant, the drawer, payment of the check was refused, when it was presented at the bank of Mannington on which it was drawn, and thereupon it was protested and returned to the bank which had issued the certificate of deposit. Then, upon request, Engle returned the certificate of deposit which was surrendered to the bank by which it had been issued and the check taken up. The action is in debt on the check and defense is made under the general issue and also a special plea charging failure of consideration. The action of the court in overruling the demurrer to the declaration is the ground of an

assignment of error, but the assignment is unsupported by any argument and we perceive no defect in the declaration.

The additional facts bearing upon the issues submitted to the jury are substantially as follows:. Owning a tract of land containing 121 acres, situate in Marion County, the plaintiff on March 23, 1905, conveyed it to James N. Shaw by a deed of trust, to secure the payment of a note for the sum of $1,000.00, executed by the plaintiff and her husband, and payable to Eliza A. Rusk, twelve months after date. Later, about November, 1906, she and her husband conveyed the land to one J. D. Charlton for the use and benefit of the Exchange Bank of Mannington. On November 10, 1906, Charlton drew his check for $1,097.88, payable to Eliza A. Rusk, which was paid and bears her endorsement. It bears the following memorandum: "For note of E. A. Rusk against O. J. Boggess." Charlton took from her a written assignment of the note and the deed of trust. Having thus gotten the land and paid or bought the note, Charlton conveyed back to Mrs. Boggess, on the same day or a day or two later, an interest in the oil and gas in the tract. Then he conveyed the residue to the Exchange Bank of Mannington, for which he had acted as agent in the transaction. Early in March, 1909, Charlton and the bank united in a deed conveying the land to C. A. Snodgrass and Charlton by direction of the bank executed written assignments of the note and deed of trust to him. The assignment is dated March 3, 1909, and was acknowledged October 26, 1909. Both assignments of the note were without recourse. By a letter dated March 6, 1909, Snodgrass gave Mrs. Boggess notice of his alleged purchase of the note and claim of right to enforce the deed of trust against her oil and gas interest in the land. Her husband responded to the notice for her and was fully advised of the claim. Acting for her, he effected the contract of lease of her interest to Bartlett April 17, 1909, a part of which was the agreement to deposit with Engle Bartlett's check for $1,250.00 of the purchase money, or a certified check or certificate of deposit therefor, (a question as to which the evidence conflicts), to be held until Mrs. Boggess should procure a release of the lien claim. Later, and long after she had parted with the note, Mrs. Rusk executed a release of the deed of trust. This action was brought July 27, 1909. Bartlett assigned the lease to N. F. Clark, who surrendered it in April, 1910, before the trial

of this action, under a clause thereof, permitting him to do so. Plaintiff's husband swears Charlton, or the bank whose agent he was, agreed to pay the Rusk note as part of the consideration for the conveyance of the land to him. Snodgrass, who, as attorney for Mrs. Rusk, collected the note from Charlton, says he does not know whether such was the agreement.

Procurement of a release of the deed of trust from Mrs. Rusk did not constitute performance of the condition precedent to the payment of the $1,250.00 to the plaintiff. At the time she executed it, Mrs. Rusk had no interest in the note. or the deed of trust. She had long since assigned the note to Charlton. The procurement of a release from her was an attempted evasion of the plaintiff's obligation. It was distinctly understood between her and Bartlett that the claim of Snodgrass, not Mrs. Rusk, was to be extinguished before absolute and final· payment of the money.

Nor did the invalidity of Snodgrass's claim, assuming the note to have been paid and not purchased by Charlton, or the lien and debt to have been merged in the title to the property, when both came into the possession and ownership of Charlton, constituting any defense. On the face of the contract, as sworn to by the parties, there was no agreement to pay the $1,250.00 to the plaintiff except upon condition. According to the witnesses for the plaintiff, the money or a certificate of deposit thereof, or a certified check therefor, was to go into the hands of Engle and to be held by him, as an indemnity in favor of Bartlett against the claim of Snodgrass, until that claim should be extinguished. According to the testimony of the witnesses for the defendant, Bartlett's check only was to go into the hands of Engle. If this testimony states the contract truly, the money was not to be actually paid by Bartlett, until after the procurement of the release. In neither case, was there an obligation of direct payment to the plaintiff. She agreed with Bartlett to procure a release of the alleged lien on the subject matter of the lease. He demanded the lease with a clear record title and she agreed to give it in that way. As executed it was not such a lease, and she agreed to forego payment of the money in question until it should be made so. If the claim of Snodgrass was invalid, for either of the two reasons assigned, she could have compelled him to execute a release by proper proceedings, and agreed to do so. Her agree-

ment was not to procure a release from any other person, for no other person was asserting any claim under the deed of trust. By her contract she precluded herself from absolute payment, and bound herself to the performance of the condition precedent. In such cases, recovery cannot be had without previous performance of the condition. Indeed, no right of action accrues until after such performance. *Plumbing Co.* v. *Carr,* 54 W. Va. 272; *Parker* v. *Building & Loan Ass'n,* 55 W. Va. 134, 147; *Reynolds* v. *Tompkins,* 23 W. Va. 229; Wharton Con., sec. 594; Hammon Con., sec. 466; Chitty Con., 833. Plaintiff's effort to establish payment of the debt or extinction thereof against Bartlett in this suit, is no performance of the agreement. She undertook to establish that fact against Snodgrass and to make it conclusive by the procurement and recordation of a release from him. He is no party to this suit and an adjudication of payment of the debt here against Bartlett would not preclude him or affect any right he may have.

As the reason or purpose of the collateral agreement of indemnity ceased with the surrender of the lease, right of recovery might be founded on that fact, if the surrender had accurred before the institution of the action, but it did not. The action was commenced July 27, 1909, and the surrender occurred April 17, 1910, about a month before the trial of the action. As there was no right of recovery nor of action at the time the action was commenced, the proceeding was fatally and incurably defective. Subsequent acquisition of the right to sue for the debt described in the declaration conferred no right of recovery in this action. It was prematurely instituted. *Wildasin* v. *Long,* decided at this term, and not yet reported: *Frye* v. *Miley,* 54 W. Va. 325; *Sillings* v. *Bumgardner,* 9 Grat. 273; *Lemon* v. *Hansbarger,* 6 Grat. 301. A cause of action is incomplete until the occurrence of default on the part of the defendant, his invasion of the plaintiff's right or neglect of the duty he owes the plaintiff, and the cause of action must exist at the date of the institution of the suit.

As to the character and terms of the collateral agreement of indemnity, the testimony is oral and conflicting. Its terms, as contended for by the defendant, are testified to by himself and two other witnesses, Hess and Weed. Plaintiff's husband testifies with equal emphasis to the different terms and provisions con-

tended for by the plaintiff. Bartlett and his witnesses say Engle was to hold his check until the lease should be procured. Boggess says the money was to be actually paid or the check cashed, and the money loaned out and the evidence of indebtedness placed in the hands of Engle. The check was never placed in the hands of Engle. On the contrary, Bartlett sent the check by Weed along with the notes and an additional check for delivery to Mrs. Boggess. Owing to a mistake in it as to the amount, the check was destroyed and Weed drew another for the correct amount and delivered it to her. His acts accord with the statement of the contract by Boggess rather than that by Bartlett and his witnesses. The delivery of the check occurred very soon after the agreement. Weed and Boggess went from Mannington to Parkersburg to close the contract, the former carrying with him the checks and notes. Upon this evidence, it was competent for the jury to find either way.

If the contract was as stated and claimed by the plaintiff, the defendant violated it and prevented the consummation thereof by stoppage of payment of the check. The collateral agreement was for his benefit and protection. He had agreed to pay $3,-630.00 for the lease and executed his obligations for that amount, two notes for $1,000.00 each, his check for $380.00, an danother for $1,250.00, but the money represented by the latter was to go into the hands of a third party and there remain, until the release of the deed of trust. There was consideration for the $1,250.00. It was part of the purchase money. The deposit agreement was collateral, relating to the time of payment. This sum of money was part of the agreed value of the lease executed to him; but there was a collateral agreement made for his benefit and protection. The money was to be held as a trust fund until the condition for final payment to the plaintiff should be performed. The condition was one of indemnity, not satisfaction nor relinquishment. It could be waived, and, once waived, the money became due immediately. His stoppage of payment of the check prevented the consummation of the agreement. In so doing, he impliedly waived the benefit of it, elected not to perform his part of it and yet claimed and held the benefit of all other provisions of the contract. The collateral agreement was not a necessary element of the contract in the sense that it could not have been omitted in the formation thereof. It could

have been so framed as to permit the lessee to rely upon general legal and equitable rules and principles for his indemnity against the Snodgrass claim. He elected in the first instance not to rely upon the law for such protection but upon an express contract. By refusal to perform his part of that subsidiary agreement, he virtually elected not to take the benefit thereof, and to stand as, if it had not been made. In this situation, logic, equity and law require him to pay the money as he would have done, had the contract been closed without the collateral agreement, and rely upon the law and the right arising out of the general contract for redress of such injury as might result to him from the Snodgrass claim. Of course Mrs. Boggess agreed to procure the release before receiving the money, but she agreed to do that on condition that Bartlett should deposit it or pay it to her and entrust her to deposit it. He was to make the money secure in a certain way, before her duty respecting the release began. That act of his was a prerequisite to obligation on her part to move for the release for the purposes of the collateral or subsidiary agreement. Her obligation under her general agreement to furnish a lease with a clear record title was an entirely different thing, not affected by the failure of the special indemnity agreement.

The general principle underlying this conclusion was applied, under circumstances somewhat different from those of this case, in *Ashland Coal & Coke Co.* v. *Hull Coal & Coke Co.*, 67 W. Va. 503. The contract involved in that case was more executory in character than this, but the conduct of the parties here embrace all the equitable considerations and elements of estoppel found in that case. Bartlett has retained the benefit of the general contract, while refusing to consummate the collateral or special agreement. His default induced that of the plaintiff upon which he relies as matter of defense, and the policy of the law denies to the wrongdoer the benefit of his wrongful act. Other cases illustrating the application of the principle of waiver, as applied to contracts containing dependent or concurrent covenants, are referred to in *Ashland &c. Co.* v. *Hull &c. Co.*, here cited.

The petition for the writ of error charges generally error in the rulings upon instructions. It specifies no particular ruling as being erroneous, nor does the brief. Not more than two instructions were given for the plaintiff and one only was given

for the defendant. These seem to have properly submitted the vital inquiry to the jury, namely, the terms of the special contract. Several instructions requested by the plaintiff and two by the defendant were refused. We perceive no error in the rulings upon any of them.

The judgment will be affirmed.

*Affirmed.*