CLIFFORD SLATER

*v.*

RILEY VARNEY

(No. 10382)

Submitted September 26, 1951. Decided November 17, 1951.

Rehearing granted February 18, 1952

RILEY, PRESIDENT, and LOVINS, JUDGE, dissenting.

*Bias & Bias* and *E. Gaujot Bias,* for plaintiff in error.

*W. B. Hogg,* for defendant in error.

HAYMOND, JUDGE:

The contestant, Clifford Slater, instituted this election contest against Riley Varney, the contestee, in the County Court of Mingo County within ten days after the county court, acting as the canvassing board to canvass the votes and to declare the results of the general election held in that county on November 7, 1950, had declared the result of the election and that, upon the face of the election returns, Varney had been duly elected to the office of clerk of the Circuit Court of Mingo County for the regular term of six years from January 1, 1951.

Two written notices substantially similar in form and substance were given by the contestant to the contestee. One dated November 16, 1950, was served upon the contestee on November 20, 1950, and service of the other, dated November 20, 1950, was accepted in writing by the contestee on November 21, 1950, on which day one of such notices was presented to and filed by the county court by order then entered of record, and the matters arising upon the notice were set for hearing at the next regular term of the court.

The notices given by the contestant disclose that he institutes this proceeding as nominee and candidate of the Republican Party against the contestee as nominee and

candidate of the Democratic Party for the office of clerk of the Circuit Court of Mingo County at the general election in November, 1950; that at that election, as shown by· the election returns, the contestant received 4440 votes and the contestee received 8756 votes, and that the county court, having completed the canvass of the results of the election, on November 13, 1950, declared the result of the election to be that the contestee had been duly elected to the office of clerk of the Circuit Court of Mingo County at the general election held November 7, 1950, for the regular term of that office beginning January 1, 1951. The notices also state that the contestant is fully qualified by law to hold the office of clerk of the Circuit Court of Mingo County and that he claims to be the duly and legally elected candidate for that office. The notices further charge that the contestee, prior to the year 1930, held the office of clerk of the County Court of Mingo County and, while acting as such clerk, collected substantial amounts of public moneys and funds belonging to the State of West Virginia, the County of Mingo, and certain magisterial districts of that county; that an official audit, by the State Tax Commissioner of the accounts of the contestee as such county clerk, disclosed that the contestee had failed to account for approximately $14,000.00 of such public moneys and funds; that certain payments were subsequently made by and credited to the contestee against the foregoing amount; that the contestee has failed to account for and pay approximately $6,000.00 of the shortage in his accounts; that he still owes that amount with interest; and that, as a result of the failure of the contestee to account for and pay the public moneys and funds collected by him as clerk of the County Court of Mingo County, he was indicted by a Grand Jury of that county for the embezzlement of such public moneys and funds and, upon being arraigned in the Circuit Court of Mingo County to answer the indictment, entered a plea of guilty and by such plea admitted his guilt as charged in the indictment.

The notices charge, as the single ground upon which

the validity of the election of the contestee is assailed, that the contestee is disqualified and ineligible to hold the office of clerk of the Circuit Court of Mingo County by virtue of Article VI, Section 14, Constitution of this State which in part provides that "No person who may have collected or been entrusted with public money, whether State, county, township, district, or other municipal organization, shall be eligible to the Legislature, or to any office of honor, trust, or profit in this State, until he shall have duly accounted for and paid over such money according to law."

In answer to the foregoing notices of the contestant, the contestee gave a written notice to the contestant dated November 25, 1950, served upon the contestant on November 27, 1950, in which the contestee denies the material allegations in the notices given by the contestant, protests the qualification of the contestant to hold the office of clerk of the Circuit Court of Mingo County for the reason that he had not been elected to that office as disclosed by the official declaration of the results of the election held November 7, 1950, and challenges the legal sufficiency of the notices given by the contestant. The grounds of demurrer set forth in the notice of the contestee are: (1) the contestant is not an interested party, has no rights to the office involved, and can not maintain this proceeding; (2) the County Court of Mingo County is without jurisdiction to hear and determine this proceeding; (3) the contestant has invoked the wrong remedy; and (4) no grounds exist on which to base an election contest and, for that reason, this proceeding is prematurely instituted.

On January 2, 1951, the first day of the next regular term of the county court following the general election held on November 7, 1950, the notices given by the contestant and the contestee were presented to the court and the proceeding was docketed and set for hearing on February 6, 1951, a later day of the same term of the court. In an original proceeding in mandamus entitled *State of West Virginia ex rel. Slater* v. *The County Court*

*of Mingo County,* in which an order was entered but no written opinion was filed, this Court required the county court to hear and determine this proceeding not later than January 25, 1951, and the county court, on that day, heard the proceeding upon the demurrer to the notices given by the contestant set forth in the notice given by the contestee and, by final order entered January 27, 1951, sustained the demurrer and dismissed the proceeding. Upon the application of the contestant, an appeal, as provided by Section 3, Article 9, Chapter 3, Code, 1931, was granted by the Circuit Court of Mingo County to the final judgment of the county court and by order entered February 9, 1951, the circuit court reversed the judgment of the County Court of Mingo County and remanded this proceeding to that court with directions to it to hear testimony in behalf of the parties and decide this proceeding upon the evidence. To that judgment of the circuit court this Court granted this writ of error upon the petition of the contestee.

By his assignments of error the contestee seeks reversal of the judgment of the circuit court upon substantially these grounds: (1) the contestant, not having received the highest number of votes cast for the office of circuit clerk, is not entitled to hold that office, has no interest in such office and, in consequence, can not maintain this proceeding; (2) the contestant has invoked the wrong remedy because the alleged disqualification or ineligibility of the contestee to hold the office of clerk of the circuit court can not be determined by the county court in this proceeding; and (3) this proceeding has been prematurely instituted because the alleged disqualification or ineligibility of the contestee is removable and may be removed by him after the institution of this proceeding.

To resolve the first contention of the contestee the pertinent provisions of the statute which relate to an election contest involving an office to be filled by the voters of a county must be considered. Section 1, Article 9, Chapter 3 of the Code of 1931, based upon Article VIII, Section 24, of the Constitution of this State which confers jurisdic-

tion upon county courts in election contests relating to their own members and all county and district officers, provides that in all cases of contested elections, the county court shall be the judge of the election, qualifications, and the returns of their own members and of all county and district officers. Section 2 of the same article and chapter of the Code contains these provisions: "A person intending to contest the election of another to any county or district office, * * *, or any office that shall hereafter be created to be filled by the voters of the county or of any magisterial or other district therein, shall, within ten days after the result of the election is declared, give the contestee notice in writing of such intention, and a list of the votes he will dispute, with the objections to each, and of the votes rejected for which he will contend. If the contestant object to the legality of the election, or the qualification of the person returned as elected, the notice shall set forth the facts on which such objection is founded. The person whose election is so contested shall, within ten days after receiving such notice, deliver to the contestant a like list of the votes he will dispute, with the objections to each, and of the rejected votes for which he will contend; and, if he has any objection to the qualification of the contestant, he shall specify in writing the facts on which the objection is founded." Section 3 of the same article and chapter of the Code, contains, among others, provisions which require that the notice of contest shall be presented to the county court at the first term after it is delivered to the person whose election is contested and shall be docketed for trial in the county court; that the hearing may be continued by the court from time to time but not beyond three months from the day of election; that the court shall declare the true result of the election and cause the result to be entered in its record; that either the contestant or the contestee shall have the right of appeal to the circuit court of the county from the final order or decision of the county court; that when such appeal is taken to the circuit court it shall be heard and determined upon the original papers, evidence, deposi-

tions and records filed before and considered by the county court and the circuit court shall determine the contest upon the merits; and that from the decision of the circuit court an appeal shall lie to the supreme court of appeals.

The above quoted provisions of Section 2 in substantially their present form have been in force and effect in this State for more than seventy one years and since they were enacted on April 11, 1873, by Section 30, Chapter 118, Acts of the Legislature of 1872-73, and have been considered by this Court in prior cases. In *Dryden* v. *Swinburn,* 15 W. Va. 234, an election contest decided by this Court in 1879, the contestant Dryden, a candidate for the office of clerk of the Circuit Court of Kanawha County, who upon the face of the election returns had been defeated by the opposing candidate Swinburn, contested the election of his opponent Swinburn upon the ground that at the time of the election he was not entitled to vote in this State and that he was for that reason disqualified to hold the office of clerk of the circuit court. The alleged disqualification of the contestee to hold the office was the sole ground on which the contestant sought to maintain the contest. In opposing the right of the contestant to maintain the proceeding, the contestee contended that the notice of contest was insufficient because it failed to show that the contestant was entitled to the office. In rejecting this contention this Court held in point one of the syllabus: "The notice was sufficient, it not being necessary, when the ground of the contest was only the want of qualification to hold the office by the party returned as elected, to furnish with it a list of votes to be disputed, nor to state facts showing that the person giving the notice was entitled to the office. It is sufficient that the notice should show he was a candidate for the office at the election, and set forth the facts on which he based his objections to his opponent holding the office." In the opinion in that case, delivered by Judge Green, this Court said:

"The notice in this case shows on its face that John Dryden, who signed it, was a contestant for this office,

that is, that he claimed he and not the party notified, Thomas Swinburn, had been elected clerk of the circuit court of Kanawha County. The notice however did not give a list of the votes which the contestant, Dryden, intended to dispute with his objections to each, or a list of the votes rejected for which he would contend, which it is insisted by appellant's counsel was essential to make the notice good. This is certainly true, if the contest had been based on the ground that illegal votes had been received, or legal votes rejected; but if the contestant does not claim that any legal votes were rejected, or any illegal votes received, it would of course be impossible to furnish any such lists, and it would obviously be unnecessary, unless the contest was confined by the statute to cases in which such legal votes had been rejected, or illegal votes had been received. The statute, however, on its face evidently contemplates other grounds on which the contest may be based. Thus it expressly provides that the contestant may object to the legality of the election; and this may be the whole basis of his contest. Of course if the election was declared to be illegally held, which conclusion and judgment of the court is evidently contemplated as possible, then the contestant could not possibly be declared by the court as elected. And yet he may, the statute says, allege this as the ground of the contest, and it follows necessarily that the notice need not set out facts which show that the contestant is entitled to the office, as the appellant's counsel insists it must in every case.

"He says that unless he shows facts which entitle him to the office, he does not show any ground for instituting this proceeding, as it is intended to redress only a private wrong in depriving him of an office to which he is entitled. But obviously the purposes of this act are misunderstood; for if he can base this notice, as the statute says he may, on the illegality of the election, this very ground shows that he is not and can not be entitled to the office. But though the contestant neither objects to the admission of illegal votes, the rejection of legal votes nor

the illegality of the election, he has still by the words of this statute a right to contest the election, because he objects to the qualifications of the person who has been returned elected."

In addition to the foregoing quotation, the opinion contains these statements: "It is said by appellant's counsel that a writ *quo warranto* is the only mode by which the *public* can oust a usurper from office; and that this statute only provides the manner in which a person, who is entitled to the office, may claim his right; and that as he in this proceeding is suing for the office, he must show a complete right to it in himself as in ejectment; and that it cannot be that any voter can institute this proceeding, as the statute shows it must be instituted by a candidate for the office, a contestant, and from this the inference is drawn that the party instituting this proceeding must in his notice allege facts that show, if true, that he is entitled to the office. The falsity of this position is shown by the absurdity to which it leads. For as the statute permits the contestant to allege the illegality of the election as the ground of the controversy, and in such case requires that the facts, which show the election to have been illegally held, shall be stated in the notice, it is obvious that so far from it being required to state facts showing that the contestant is entitled to the office, it may show facts that show it is impossible for him or any one else to be entitled to the office under this election. All that can possibly be required is that the party giving the notice should be a candidate for the office. I do not say that this is necessary, but it may be, and if so, this notice complies with this requisite as it says: 'that he will claim to be himself, duly and legally elected to said office at said election.' "

The holding of this Court in the *Dryden* case, that in an election contest when the sole ground of contest is the disqualification of the party returned as elected to hold the office the contestant is not required to show that he is entitled to the office, has not been departed from, but has been adhered to and approved by this Court in sub-

sequent cases, and the decision in that case constitutes the law in this jurisdiction on that question. *Gorrell* v. *Bier,* 15 W. Va. 311; *Dryden* v. *Swinburne,* 20 W. Va. 89; *Halstead* v. *Rader,* 27 W. Va. 806. See also concurring opinion of Judge Rose in *State ex rel. Savage* v. *Robertson,* 124 W. Va. 667, 23 S. E. 2d 281. In *Halstead* v. *Rader,* 27 W. Va. 806, an election contest in which the sole ground of contest was the refusal of the county court to count certain votes cast at one election precinct this Court said: "In *Dryden* v. *Swinburn,* 15 W. Va. 234, this Court decided that, in a case in which the contest was the want of qualification in the person declared elected to hold the office, it was only necessary to *set forth the facts* in the notice which showed such disqualification, and that the statute in such case did not require the notice to show that the contestant was entitled to the office."

By the language of Section 2, Article 9, Chapter 3, Code, 1931, which expressly provides that the contestant in an election contest may object to the qualification of the person returned as elected, and under the authority of the above cited cases, it is clear that the contestant Slater is entitled to institute this proceeding upon the ground that the contestee is disqualified to hold the office of clerk of the Circuit Court of Mingo County and that the contestant is not required to show that he is entitled to hold that office.

In as much as the contestee cites and relies upon the case of *State ex rel. Depue* v. *Matthews,* 44 W. Va. 372, 29 S. E. 994, to support his contention that the contestant can not maintain this proceeding because he has no interest in or is not entitled to the office of clerk of the circuit court, it is pertinent to observe that there is a well established difference between an election contest based upon the illegality of the election or the qualification of the person returned as elected, in which, in either instance, the contestant is not required to show that he is entitled to the office, and a quo warranto proceeding, or a proceeding upon an information in the nature of a writ of quo warranto, to determine the right of a person to

hold a public office to which he claims he is entitled. The writ of quo warranto is the proper remedy to test the title to an office, *Board of Education* v. *Holt,* 54 W. Va. 167, 46 S. E. 134; but that writ may be prosecuted only at the instance of the Attorney General or the prosecuting attorney of any county with respect to the matters specified in the statute, Section 1, Article 2, Chapter 53, Code, 1931; and a proceeding upon an information in the nature of a writ of quo warranto, to determine the right of a claimant to public office, may be instituted only by the Attorney General or the prosecuting attorney of any county or by any person interested. Section 4, Article 2, Chapter 53, Code, 1931. With respect to an information in the nature of a writ of quo warranto this Court has held that where two parties are opposing candidates for a public office and the party who receives the highest number of votes for the office at an election becomes disqualified to hold the office, his disqualification does not confer any interest in the office upon the party who received the lesser number of votes at the election and that for that reason such party could not maintain such proceeding. *State ex rel. Depue* v. *Matthews,* 44 W. Va. 372, 29 S. E. 994. See also *State ex rel. Scanes* v. *Babb,* 124 W. Va. 428, 20 S. E. 2d 683. The holdings in the two cases just cited were rendered in and relate to a proceeding upon an information in the nature of a writ of quo warranto and do not apply to this proceeding to contest the election of the contestee.

The assignment of error by the contestee that the contestant has invoked the wrong remedy because the alleged disqualification of the contestee to hold the office of clerk of the circuit court can not be determined by the county court in an election contest is not well founded. As already pointed out, in disposing of the first assignment of error presented by the contestee, the provision of Section 2, Article 9, Chapter 3, Code, 1931, that if the contestant object to the legality of the election, or the qualification of the person returned as elected, the notice shall set forth the facts upon which such objection is founded, unquestionably makes the qualification of the

person returned as elected to a county office a ground on which to base an election contest, and gives a contestant the right to institute and prosecute the contest on that ground, even though in such contest, the contestant is not required to show that he is entitled to the office to which the contest relates. Any conclusion to the contrary would disregard or erase the plain terms of the statute which no court is empowered or permitted to do. That the disqualification of the person elected to hold the office involved in an election contest is a valid ground upon which to base such contest has been recognized by decisions of this Court. *Dryden* v. *Swinburn,* 15 W. Va. 234; *Dryden* v. *Swinburne,* 20 W. Va. 89; *Orndorff* v. *Potter,* 125 W. Va. 785, 25 S. E. 2d 911. In the *Dryden* case, which was twice before this Court, and in the *Orndorff* case, the election contest was based upon the alleged disqualification of the contestee, and in each of them the disqualification was established and the election of the contestee was vacated and held for naught, even though the contestant failed to show that he was entitled to the office involved in the contest. In *Gorrell* v. *Bier,* 15 W. Va. 311, *Morrison* v. *McWhorter,* 57 W. Va. 614, 52 S. E. 394 and *Irons* v. *Fry,* 129 W. Va. 284, 40 S. E. 2d 340, in which the contested election was based upon the alleged disqualification of the contestee, the contestant failed to establish a valid disqualification, and for that reason the contest in each instance was dismissed. These three cases are cited by the contestee in support of his contention that the contestant has invoked the wrong remedy in this proceeding but none of those cases is authority to sustain that contention. On the contrary, study of those cases discloses that if a valid disqualification had been established it would have constituted, in each instance, a sufficient ground upon which to base and maintain an election contest.

The contestee vigorously asserts that the alleged disqualification of the contestee involved in *Dryden* v. *Swinburn,* 15 W. Va. 234, *Gorrell* v. *Bier,* 15 W. Va. 311, *Dryden* v. *Swinburne,* 20 W.Va. 89, *Orndorff* v. *Potter,* 125 W. Va. 785, 25 S. E. 2d 911, and *Irons* v. *Fry,* 129 W. Va. 284, 40

S. E. 2d 340, resulted from and was created by constitutional or statutory provisions which expressly forbid the election of a person subject to such disqualification. This contention is correct. In the two reviews by this Court in the case of *Dryden* v. *Swinburn,* respectively reported in 15 W. Va. 234 and in 20 W. Va. 89, the disqualification of the contestee, Swinburn, existed by virtue of Article IV, Section 4, of the Constitution of this State which declares that no person, except citizens entitled to vote, shall be elected or appointed to any state, county or municipal office, and in *Gorrell* v. *Bier,* 15 W. Va. 311, the alleged disqualification was based upon Article IX, Section 3, of the Constitution which provides that the same person shall not be elected sheriff for two consecutive full terms. In *Orndorff* v. *Potter,* 125 W.Va. 785, 25 S. E. 2d 911, involving an election of members of a county board of education, the alleged disqualification arose under Section 1, Article 5, Chapter 18, Code, 1931, as amended, which provides that no more than two members shall be elected from the same magisterial district, and in *Irons* v. *Fry,* 129 W. Va. 284, 40 S. W. 2d 340, the alleged disqualification was based upon the provision of Article VIII, Section 23, of the Constitution which declares that no two commissioners of the county court shall be elected from the same magisterial district and the provisions of Section 5, Article 4, Chapter 3, Code, 1931, as amended, which state that in no event shall any candidate for that office be nominated from the same magisterial district in which an elected member of the county court resides who will continue to hold office after the beginning of the term for which a nomination for that office is made. Though the constitutional and statutory provisions dealt with in those cases related to the election or the nomination of the contestee, the difference between disqualification to be elected to or nominated for an office and the constitutional disqualification here involved of the contestee to hold an office until he accounts for and pays the public moneys which were collected by him, though apparent, is not controlling so long as the disqualification

continues to exist. The election or the appointment of a person to public office is merely the means provided by law by which such person is enabled to obtain and discharge the duties of the office and it is manifest that an election to an office of a person who, by reason of a permanent disqualification or ineligibility, can not legally hold or occupy the office is not a valid election. This is necessarily so. It would be absurd to say that a person who receives the highest number of votes for an office voted for at an election, but who can not legally hold or occupy such office is or can be legally elected to the office merely because he received the greatest number of votes. That a valid election to a public office impliedly contemplates and embraces the right to hold the office is indicated by the decision of this Court in *Dryden* v. *Swinburne,* 20 W. Va. 89. In that case, the contestee, Swinburne, who at the election, received 2182 votes as against 2103 votes for the contestant, Dryden, was held not to have been elected to the office of clerk of the circuit court because he was disqualified to be elected and to hold the office, and in the opinion in that case this Court said: "It follows, therefore, as the plurality of votes in this election were cast for Thomas Swinburne, and he was ineligible, because he was an alien, that the election must be held to be a failure, and the office of clerk of the circuit court of Kanawha declared vacant."

In support of the contention of the contestee that an election contest is not the proper proceeding or remedy to challenge his election as shown by the election returns because of his disqualification, under Article VI, Section 14, of the Constitution, to hold the office of clerk of the circuit court, the contestee argues that instead of this proceeding, quo warranto, an information in the nature of a writ of quo warranto, and a proceeding under the provisions of Section 7, Article 6, Chapter 6, Code, 1931, are the only proper methods to determine the right of the contestee, Varney, to hold the office to which, according to the election returns, he was elected by a large majority of the votes. This argument is wholly untenable. It

ignores the express provisions of the statute and means, in effect, that the contestant, though an unsuccessful candidate, who is neither a public officer, because he was defeated at the election, nor a person who has any interest in or right to the office involved, is without any effective remedy by which he may challenge the election of an opponent who was disqualified to hold the office voted for at the election when the election was held. As heretofore pointed out, a quo warranto proceeding can be instituted and maintained only by the Attorney General or the prosecuting attorney of a county. Section 1, Article 2, Chapter 53, Code, 1931. As the contestant is not an interested person, and has no right to the office, he can not resort to an information in the nature of a writ of quo warranto, which can not be maintained by a person who has been defeated in the election at which he was a candidate. Section 4, Article 2, Chapter 53, Code, 1931; *State ex rel. Depue* v. *Matthews,* 44 W. Va. 372, 29 S. E. 994. A proceeding to remove a disqualified person from a county office, under Section 7, Article 6, Chapter 6, Code, 1931, may be instituted only by the county court or other similar tribunal, a county officer, or five or more voters of the county, and for these obvious reasons the contestant can not invoke the remedy provided by that section of the statute. The contestant can not maintain a suit in equity because equity does not have jurisdiction to determine matters which are cognizable in an election contest. *Evans* v. *Charles,* 133 W. Va. 463, 56 S. E. 2d 880. In short, the contestant has no remedy by which he can challenge the validity of the election of the contestee or his right to hold the office to which, according to the election returns, the contestee was elected, other than an election contest based upon the constitutional disqualification of the contestee to hold the office until he accounts for and pays according to law the public moneys heretofore collected by him; and as the statute already referred to enables the contestant to base an election contest on the ground that the person returned as elected is disqualified, it is clear that the contestant may pursue that remedy in this proceeding.

The third and final assignment of error of the contestee that as his alleged disqualification may be removed by his payment of the public moneys received and not accounted for by him, this proceeding was prematurely instituted because it was brought before the commencement of the term of office to which he contends he was elected, is likewise devoid of merit. The statute relating to an election contest before a county court involving a county officer requires the contestant to institute the contest within ten days after the result of the election is declared. The contestant has complied with this requirement; but if he had delayed the institution of this proceeding beyond the ten day period, his statutory remedy of an election contest would have lapsed and expired. According to the allegations of the notices, which upon demurrer are regarded as true, the contestee was disqualified, under Article VI, Section 14, of the Constitution to hold the office which he claims, both at the time of the election and at the time of the institution of this proceeding. As the disqualification of the contestee existed when this proceeding was instituted, it constituted a valid ground on which to base the election contest and gave rise to a cause of action in favor of the contestant against the contestee which justified its institution.

It should be emphasized that Section 2, Article 9, Chapter 3, Code, 1931, the statute upon which this proceeding is based, which expressly provides that the contestant may "object to * * * the qualification of the person returned as elected" to a county office, does not specify or limit the character of the qualification to which objection may be made or restrict the qualification of the candidate returned as elected to his eligibility or his qualification to be elected. The term is used without limitation or restriction and in its broad and comprehensive sense. The language of the statute plainly and necessarily implies that, whether the candidate returned as elected is ineligible or disqualified to be elected or to hold the office voted for, or whether his ineligibility or disqualification is permanent, or temporary and removable by action on

his part legally necessary to remove it after the election, his ineligibility or disqualification, regardless of its nature, may constitute a ground on which to base an election contest and may be challenged and determined in that kind of proceeding. This Court has given the statute that effect and applied it in an election contest. *Dryden* v. *Swinburn,* 15 W. Va. 234; *Dryden* v. *Swinburne,* 20 W. Va. 89. Though in the *Dryden* case, which was twice before this Court for appellate review, the disqualification of the candidate returned as elected was imposed by a constitutional provision which forbade his election, the notice challenged his right "to hold said office or perform the duties thereof", and the holding of this Court in that case, in 20 W. Va. 89 at page 138, was that the contestee Swinburne, the person returned as elected, was "not duly and legally elected to said office, and is not legally entitled to the same, and has no right to perform the duties thereof for said term"; that though "a plurality of votes cast at said election were cast for Thomas Swinburne," he "was because of his being an alien ineligible to hold said office"; and that "no one was legally elected at said election, or is entitled by reason thereof to hold said office; and that there is a vacancy in said office which must be filled in the manner prescribed by law." The application made of the statute in the *Dryden* case differentiates an election contest, which is created and regulated by the statute, from ordinary actions at law or suits in equity with respect to the character and the sufficiency of the cause of action which must exist at the time of its institution and renders the holding in *Boggess* v. *Bartlett,* 72 W. Va. 377, 78 S. E. 241, an ordinary action at law, cited and relied on by the contestee, inapplicable with respect to the sufficiency of the cause of action in this proceeding. The meaning and the effect given the statute by the decisions of this Court in the *Dryden* case, also distinguish this proceeding from the Idaho case of *Bradfield* v. *Avery,* 16 Idaho 769, 102 P. 687, 23 L. R. A. (N.S.) 1228, in so far as that case holds that a demurrer to a complaint in an election contest to determine the eligibility

to hold office of a person returned as elected who was eligible at the time of the election, should be sustained on the ground that the contest was premature because instituted before the commencement of the term of the office to which he claimed to have been elected. In the Indiana case of *Fields* v. *Nicholson,* 197 Ind. 161, 150 N. E. 53, the court held that, under a statute which provided that the election of a candidate may be contested when the contestee was ineligible, a defeated candidate could maintain an election contest, based on that ground, against an opposing candidate who at the election received the highest number of votes. To the same effect is the case of *Miller* v. *Berg,* 190 Minn. 352, 251 N. W. 682, in which the Supreme Court of Minnesota held that the question whether a person elected to a public office is a citizen of the United States and eligible to hold the office may be raised in an election contest.

It follows that the notices filed by the contestant are good on demurrer and motion to quash and that the demurrer of the contestee should have been overruled by the county court. In view of that situation it is important to determine when the disqualification or the ineligibility, which is removable by the payment by the contestee of the public moneys collected by him, may be removed and the contestee by such removal rendered qualified to hold the office to which he claims to have been elected.

In *State ex rel. Clayton* v. *Neal,* 122 W. Va. 501, 11 S. E. 2d 109, discussing the time at which to determine the eligibility of a candidate for a public office, this Court said that the eligibility of a candidate for the office of prosecuting attorney "must be determined as of the date when he would enter upon the duties of his office, if elected, to-wit, the 1st day of January, 1941." In that case, a proceeding in mandamus, the writ sought by the petitioner to compel a county court sitting as a board of canvassers to declare him to be the nominee of a political party for the office of prosecuting attorney of the county was denied on the ground that a board of canvassers was with-

out jurisdiction to determine the legality of a certificate of announcement of a candidate in a primary election or his eligibility to hold the office he claimed; and the question of the time at which a candidate must be eligible to hold office was not a point of decision in that proceeding. That specific question, which is complex and difficult to determine, has not been passed upon in any decision by this Court. In other jurisdictions, however, the courts have considered the question and in their decisions have reached different conclusions and variant results. On that subject the text in 42 Am. Jur., Public Officers, Sections 39 and 40, contains these statements:

"The courts are frequently called upon to determine the question as to when the conditions of eligibility to office must exist, whether at the time of election, the commencement of the term, or the induction into office. In ascertaining this matter, the language used in the constitutional or statutory provision declaring the qualifications is to be considered. It may expressly or by necessary implication specify the time when the required eligibility must exist. Where such is the case, there can be no question but that the candidate must possess the necessary qualifications at that time. If it is specified that they must exist at the time of the election, a candidate who does not possess them at that time is not eligible although the disqualifications cease to exist before the beginning of the term, or later. * * *. If the Constitution or statutes do not specify the time when the conditions of eligibility must exist, it is necessary for the courts to have recourse to some other means of determining the matter. The terms employed in declaring the qualifications are to be taken into consideration. And since these are necessarily variant, it is not strange that the courts have reached different conclusions. Some of them, perhaps the majority, take the view that the word 'eligible' as used in Constitutions and statutes has reference to the capacity not of being elected to office, but of holding office, and that, therefore, if qualified at the time of commencement of the term or induction into office, disqualification of the

candidate at the time of election or appointment is immaterial. It may suffice, therefore, that a disqualification existing at the time of the election be removed before the term of office begins, or before the candidate qualifies or is inducted into office. * * *. Other courts take the position that the conditions of eligibility must exist at the time of the election, and that their existence only at the time of the commencement of the term of office or induction of the candidate into office and assumption by him of his duties is not sufficient to qualify him for the office. * * *. As stated above, the language used in the Constitution or statute is of first importance in determining when the qualification to office must exist. Where the provision there appearing refers to holding of office, rather than to eligibility to office, in defining the qualifications, the courts are inclined to hold that the qualifications are to be determined at the time of the commencement of the term or of the induction into office, rather than at the time of the election."

In dealing with the subject of default in the payment of public funds as affecting the eligibility for office of a candidate 67 C. J. S., Officers, Section 25, uses this language: "Under the provisions of some constitutions or statutes, a defaulting officer is disqualified from office, or shall be disqualified until the moneys for which he is in default are accounted for, or until he obtains a discharge therefor. * * *. Such a provision is generally held not to provide a permanent ineligibility and, on payment of all amounts for which the officer is delinquent, he is restored to the right to hold office; and it has been held that it is sufficient if the condition is complied with before the functions of the new office are to be taken up."

Courts in several jurisdictions hold that the eligibility of a candidate for office, under a constitutional or statutory provision dealing with the qualification of public officers, relates to the time of the election and means capacity to be elected rather than capacity to hold office, that a candidate for a public office must be qualified at the time of the election, and that if he is not then quali-

fied he can not hold the office even though between the time of his election and the commencement of the term of the office he has fulfilled all the conditions which, if existing at the time of the election, would have entitled him to hold it. *Finklea* v. *Farish,* 160 Ala. 230, 49 So. 366; *Davis* v. *Teague,* 220 Ala. 309, 125 So. 51; *Searcy* v. *Grow,* 15 Cal. 117; *Sheehan* v. *Scott,* 145 Cal. 684, 79 P. 350; *State ex rel. Taylor* v. *Sullivan,* 45 Minn. 309, 47 N. W. 802, 11 L. R. A. 272, 22 Am. St. Rep. 729; *State ex rel. Thayer* v. *Boyd,* 31 Neb. 682, 48 N. W. 739, 51 N. W. 602; *State ex rel. Broatch* v. *Moores,* 52 Neb. 770, 73 N. W. 299; *State ex rel. McKelvie* v. *Wait,* 95 Neb. 806, 146 N. W. 1048; *State ex rel. Nourse* v. *Clarke,* 3 Nev. 566; *People* v. *Purdy,* 154 N. Y. 439, 48 N. E. 821, 61 Am. St. Rep. 624; *State ex rel. Reynolds* v. *Howell,* 70 Wash. 467, 126 P. 954, 41 L. R. A. (N.S.) 1119.

A majority of the courts in other jurisdictions, whose decisions appear to constitute the weight of judicial authority, hold that the eligibility of a candidate for office under constitutional and statutory provisions affects the right to hold an office instead of the right to be elected to the office and that, if his disqualification has been removed at the time of the commencement of the term or at the time of his induction into office, his disqualification at the time of the election is immaterial. *Neelley* v. *Farr,* 61 Colo. 485, 158 P. 458, Ann. Cas. 1918A, 23; *Bradfield* v. *Avery,* 16 Idaho 769, 102 P. 687, 23 L. R. A. (N. S.) 1228; *People* v. *Hamilton,* 24 Ill. App. 609; *Smith* v. *Moore,* 90 Ind. 294; *Vogel* v. *State,* 107 Ind. 374, 8 N. E. 164; *Brown* v. *Goben,* 122 Ind. 113, 23 N. E. 519; *Shuck* v. *State,* 136 Ind. 63, 35 N. E. 993; *Hoy* v. *State,* 168 Ind. 506, 81 N. E. 509, 11 Ann. Cas. 944; *Demaree* v. *Scates,* 50 Kan. 275, 32 P. 1123, 20 L. R. A. (N.S.) 97, 34 Am. St. Rep. 113; *Privett* v. *Bickford,* 26 Kan. 52, 40 Am. Rep. 301; *Kirkpatrick* v. *Brownfield,* 97 Ky. 558, 31 S. W. 137, 29 L. R. A. 703, 53 Am. St. Rep. 422; *Jones* v. *Williams,* 153 Ky. 822, 156 S. W. 876; *State ex inf. Major, ex rel. Ryors* v. *Breuer,* 235 Mo. 240, 138 S. W. 515; *In re Kilburn,* 157 Misc. 761, 284 N. Y. Supp. 748; *State ex rel. West* v. *Breckinridge,* 34 Okla. 649,

126 P. 806; *Mosby* v. *Armstrong*, 290 Pa. 517, 139 A. 151; *State ex rel. Perkins* v. *Edwards*, 99 Vt. 1, 130 A. 276; *State ex rel. Schuet* v. *Murray*, 28 Wis. 96, 9 Am. Rep. 489; *State ex rel. Off* v. *Smith*, 14 Wis. 497. See also 88 A. L. R., Annotations, 812, 143 A. L. R., Annotations, 1026.

The statement in the opinion in *State ex rel. Clayton* v. *Neal*, 122 W. Va. 501, 11 S. E. 2d 109, that the eligibility of a candidate to perform the duties of the office which he seeks "must be determined as of the date when he would enter upon the duties of his office, if elected," which in that instance was the first day of January, 1941, is in accord with and is supported by the above cited cases in other jurisdictions which apparently constitute the weight of judicial authority, and expresses the sound and correct principle of law to be applied in determining the eligibility of a candidate to hold the office to which he claims to have been elected. Application of this rule in this jurisdiction means that a candidate who is ineligible or disqualified to hold the office at the time of the election, in order to occupy it, must remove his disqualification at or before the commencement of the term of office to which he was elected according to the election returns.

Article VIII, Section 18, of the Constitution of this State relates to the office of clerk of the circuit court and provides that the voters of each county shall elect a clerk of the circuit court whose term of office shall be six years, that his duties and compensation and the manner of removing him from office shall be prescribed by law, and that when a vacancy shall occur in that office, the circuit court or the judge in vacation shall fill it by appointment until the next general election. Article IV, Section 7, of the Constitution of this State declares that the general elections of State and county officers, and of members of the Legislature, shall be held on the Tuesday next after the first Monday in November, until otherwise provided by law, and that the terms of such officers, not elected or appointed to fill a vacancy, shall, unless otherwise provided in the Constitution, begin, on the first day of January, and of the members of the Legislature, on the first

day of December, next succeeding their election. This section, and Article VI, Section 14, which provides that no person who may have collected or been entrusted with public money, "whether State, county, township, district, or other municipal organization," shall be eligible to the Legislature or to any office of honor, trust, or profit in this State, until he shall have duly accounted for and paid over such money according to law, when read and considered together, indicate clearly that a candidate who, at a general election, is elected, according to the election returns, to a public office for a regular term, but who at the time of the election is ineligible to the office to which he claims to have been elected, must remove the disqualification imposed by Article VI, Section 14, before the commencement of the regular term of the office voted for at such election. Section 5, Article 1, Chapter 6, Code, 1931, provides that the oath of office required by law shall be taken after the person shall have been elected or appointed to the office, and before the date of the beginning of the term, if a regular term, but if to fill a vacancy, within ten days from the date of the election or the appointment, and in any event before such person enters into or discharges any of the duties of the office. Under the foregoing statute a candidate elected to an office for a regular term can not qualify for the office until he takes the oath prescribed by law, but he must take such oath before the date of the beginning of the regular term to which he has been elected. Of course he must be eligible to the office when he takes the oath which the law requires of him. It has long been the custom in this State for elective or appointive officers to qualify by taking the required oath and giving bond before the beginning of their terms of office. *State ex rel. Conley* v. *Thompson,* 100 W. Va. 253, 130 S. E. 456.

Consideration and application of the constitutional and statutory provisions just referred to impel the conclusion that the contestee, being ineligible to hold the office of clerk of the Circuit Court of Mingo County at the time of the general election in 1950 and at the time of the in-

stitution of this proceeding, must remove his disqualification before the beginning of the regular term of that office which was the first day of January, 1951, and that if he has failed to do so his ineligibility to the office becomes permanent and irremovable from and after that time. Whether the contestee has removed his ineligibility or disqualification to hold the office during the time between the institution of this proceeding and the commencement of the regular term of the office of clerk of the Circuit Court of Mingo County on January 1, 1951, can not, of course, be passed upon or determined upon this writ of error, as the county court, by its action in sustaining the demurrer to the notices and in dismissing this proceeding, did not have before it any evidence in behalf of either party or hear or determine this proceeding upon its merits. As the contestee could have removed his disqualification during the pendency of this proceeding and before the first day of January, 1951, he is entitled to show that he has done so as a defense to the charge of his disqualification set forth in the notices of contest. If, upon a hearing of this proceeding upon its merits the contestee establishes that defense by competent evidence, he is entitled to hold the office and this proceeding should be dismissed. If, however, upon such hearing, it appears that his disqualification, charged in the notices, was not removed before the commencement of the regular term of the office but existed at, and has continued after, the beginning of such term, the disqualification of the contestee has become permanent and irremovable. In those circumstances he would then be ineligible to the office, and, as declared in *Dryden* v. *Swinburne,* 20 W. Va. 89, at page 137, "the election must be held to be a failure, and the office of clerk of the circuit court * * * declared vacant."

It may be urged, in support of the contention of the contestee that this proceeding is prematurely instituted, that, in the event an election contest involving the ineligibility or the disqualification of a contestee, which exists at the time of the election but which, as here, is

removable before the commencement of the term of office to which he is returned as elected, is determined and the election vacated and held for naught before the commencement of the term of such office and the contestee subsequently but before the first day of the term of office, removes his ineligibility or disqualification, the contestee would be erroneously deprived of his right to hold such office. Though it is possible or even probable that an election contest involving the eligibility or the disqualification of a contestee which may be removed by him may be heard and determined adversely to such contestee before the commencement of the term of office to which he has been returned as elected, because the time of the four regular sessions which county courts are required by Article VIII, Section 22, of the Constitution of this State and by Section 2, Article 1, Chapter 7, Code, 1931, to hold in each year is not fixed by these provisions and under them such sessions shall be held at such times as may be fixed by such courts, it does not follow that a contestee who removes his ineligibility or disqualification in time would be deprived of any right he may then have to qualify for the office. Should the termination of an election contest occur before the commencement of the term of office of a contestee whose ineligibility or disqualification is removable before that time, the county court in vacating the election because the ineligibility or the disqualification continues to exist at the time the judgment is rendered, could and should protect and safeguard any right of such contestee to remove his ineligibility or disqualification and to hold the office by virtue of the election by providing that the judgment vacating the election should be effective only in the event he does not remove the ineligibility or the disqualification before the commencement of the term of office to which he was returned as elected. The supposed situation, however, does not and can not exist with respect to this election contest and the question to which its existence in any given instance would give rise is, of course, not presented or decided in this proceeding.

For the reasons stated, the judgment of the Circuit Court of Mingo County, reversing the final order of the County Court of Mingo County, which dismissed the contest on demurrer to the notices, and remanding this proceeding to the county court to be heard and determined upon its merits, is affirmed, and this proceeding is remanded to the county court of that county for that purpose, and for such further action as may be necessary in conformity to the principles enunciated in this opinion.

*Affirmed.*

RILEY, JUDGE, dissenting:

In all deference to the majority members of this Court, I dissent from that part of the majority opinion in this case which holds that the contest before the County Court of Mingo County is not premature.

West Virginia Constitution, Article VI, Section 14, provides that: "* * * No person who may have collected or been entrusted with public money, whether State, county, township, district, or other municipal organization, shall be eligible to the Legislature, or to any office of honor, trust or profit in this State, until he shall have duly accounted for and paid over such money according to law." This provision, in my opinion, does not deal with the right of a person delinquent as to public money to be elected to office. Clearly it provides only a conditional ineligibility of a contestee, who has received a majority of the votes cast in an election, to hold office. Such provision is found at no other place in either the Constitution or the statutory law of this State.

None of the cases cited in the majority opinion is in point with the instant case, nor sustains the position that the instant proceeding is not premature. *Dryden* v. *Swinburn,* 15 W. Va. 234; *Swinburn* v. *Smith and Dryden,* 15 W. Va. 483, and *Dryden* v. *Swinburne,* 20 W. Va. 89, involve a contest before the County Court of Kanawha County of Swinburn's election as Clerk of the Circuit Court of that County. The contest was predicated upon

the fact that at the time of the election Swinburn was a British subject, and, therefore, not a citizen of the United States and was ineligible *to be elected* to office, though he had received a majority of the votes cast in the election then under contest. West Virginia Constitution, Article IV, Section 4, provides: "No person, except citizens entitled to vote, *shall be elected* or appointed to any State, county or municipal office; * * *." (Italics supplied). There is indeed a wide difference between qualification to be elected to public office, and ineligibility to hold office. That under the holding of this Court in the *Dryden* cases and in *Halstead* v. *Rader*, 27 W. Va. 806, the contestant Slater in the instant case, even if he should be entitled to and does prevail in the election contest, will not be entitled to the office in contest is of no moment. The statement made in *Halstead* v. *Rader, supra,* cited in the majority opinion, which involved an election contest in which the sole ground of the contest was the refusal of the county court to count certain votes cast at an election precinct that "In Dryden v. Swinburn, 15 W. Va. 234, this Court decided that, in a case in which the contest was the want of qualification in the person declared elected to hold the office, it was only necessary to *set forth the facts* in the notice which showed such disqualification, and that the statute in such case did not require the notice to show that the contestant was entitled to the office, * * *.", is to a large extent *dictum.*

Likewise the cases of *Irons* v. *Fry,* 129 W. Va. 284, 40 S. E. 2d 340; *Orndorff* v. *Potter,* 125 W. Va. 785, 25 S. E. 2d 911; *State of West Virginia ex rel. Miller* v. *Board of Education of Mason County,* 126 W. Va. 248, 27 S. E. 2d 599; and *Gorrell* v. *Bier,* 15 W. Va. 311, should be distinguished from the instant case.

The case of *Irons* v. *Fry,* involved Article VIII, Section 23, of the West Virginia Constitution, which reads, in part: "* * * But no two of said commissioners *shall be elected* from the same magisterial district." (Italics supplied.) And Chapter 48, Article 4, Section 5, Acts of the Legislature, 1943, amending and reenacting **Code,**

3-4-5, which reads, in part: "* * * That with respect to nominations of commissioners of county courts, no two of such commissioners *shall be nominated* as the party candidates from the same magisterial district where more than one such commissioner is to be so nominated at any primary election. * * *". (Italics supplied). The *Orndorff* and *Miller* cases involved, Code, 18-5-1, as amended and reenacted by Chapter 42, Article 5, Section 1, Acts of the Legislature, Regular Session, 1941, which provides, in part, that: "* * * No more than two members [of county boards of education] *shall be elected* from the same magisterial district." (Italics supplied). The *·Gorrell* case simply held that under West Virginia Constitution, Article IX, Section 3: "A sheriff whose full term of office expired December 31, 1876, is eligible to fill a vacancy in the sheriffalty at an election held the second Tuesday of October, 1878; * * *."

As stated in the majority opinion: "A majority of the courts in other jurisdictions, whose decisions appear to constitute the weight of judicial authority, hold that the eligibility of a candidate for office under constitutional and statutory provisions affects the right to hold an office instead of the right to be elected to the office and that, if his disqualification has been removed at the time of the commencement of the term or at the time of his induction into office, his disqualification at the time of the election is immaterial." The majority opinion cites many cases in support of the foregoing statement, and, in all deference, I am of opinion that the majority opinion is contrary to the decisions constituting the weight of authority.

As to whether this proceeding was prematurely instituted, the majority opinion poses a serious question: Would a contestee be erroneously deprived of his right to hold office, if an election contest, involving a conditional ineligibility is determined finally against the contestee prior to the beginning of the term for which the contestee was elected, and thereafter, but before the beginning of the term of office, the conditional ineligibility is removed? The majority opinion inaptly answers this

question as follows: (1) The county court "could and should protect and safeguard any right of such contestee to remove his ineligibility and disqualification and to hold the office by virtue of an election by providing that the judgment vacating the election shall be effective only in the event the contestee does not remove the ineligibility or disqualification before the commencement of the term of office to which he was returned as elected; and (2) the supposed situation does not and cannot exist in respect to this election contest. The vice of the first position is found in Code, 3-9-2, which provides: "A person intending to contest the election of another to any county * * * office, * * *, shall, within ten days after the result of the election is declared, give the contestee notice in writing of such intention, and a list of the votes he will dispute, with the objections to each, and of the votes rejected for which he will contend." And Code, 3-9-3, provides for the trial of an election contest, and that: "At the final trial of such contest the court shall declare the true result of such election, and cause the same to be entered on the records of the court."

Where, may it be asked, is there anything in these statutes which provides for a contest involving a conditional ineligibility to hold office? The very language of Section 2, which provides that the contestee's notice shall set forth a list of the votes which he will dispute, with the objections "to each, and of the votes rejected for which he will contend," is not consonant with the language of West Virginia Constitution, Article VI, Section 14, which provides: "No person who may have collected or been entrusted with public money, whether State, county, township, district, or other municipal organization, shall be eligible * * * to any office of honor, trust or profit in this State, until he shall have duly accounted for and paid over such money according to law."

Nor, in my opinion, is there any merit in the second position taken in the majority opinion, which involves the question as to what would happen if the election contest is completed before the term of office is over. I simply

say that the fact that something is not likely to happen should not deter this Court from laying down a general rule, which would prevail if the event posed in the majority opinion should occur. The majority members of this Court have laid down a rule from which the Court may be forced to depart in a case which will invoke the very question suggested in the instant opinion. There is nothing in either the constitutional or statutory law of this State which will permit a county court in an election contest in its final order deciding such contest to put a condition upon the operation of its order. Such a position would prevent finality in the orders of county courts in the matter of election contests, and is apt to cause confusion and uncertainty, which may result in wrongdoing in both elections and election contests. How, may it be inquired, can a party aggrieved in an election contest, involving a removable ineligibility properly resort to the circuit court where the judgment of the county court, acting in an election contest, contains a defeasance clause?

As hereinbefore quoted, Article VI, Section 14, of the Constitution of this State renders a person ineligible to be a member of the Legislature or to hold an office of public trust *until he shall have duly accounted for and paid over* public moneys which may have come into his hands according to law. Though not carried into the syllabus, the opinion of the Court in this proceeding by ignoring the words "until he shall have duly accounted for and paid over", contained in said Section 14, in effect, has vitiated the constitutional provision by holding that the ineligibility of the contestee must be removed at or before the commencement of the term of office to which such person may have been elected. It has always been my understanding that an amendment to the Constitution of this State must be submitted to the citizens and voters of the State, and that neither this Court, nor any other body or official, has the power to perform that function by reading into it words that do not appear therein.

"Where * * * [the Constitution] is clear in its terms and of plain interpretation to any ordinary and reasonable mind, there is no room for construction, and it would be mischievous and unlawful to assume it." *May* v. *Topping,* 65 W. Va. 656, 661, 64 S. E. 848. "The interpretation that should be given it [the Constitution] is that which reasonable minds, the great mass of the people themselves, would give it." *May v. Topping, supra.*

It is my considered view that the ineligibility of the contestee who has collected public moneys and has not paid over and accounted for the same becomes non-existent by force of the plain words of the constitutional provision when such person accounts for and pays over such public moneys in accordance with law. The constitutional provision fixes no time for the removal of such ineligibility, and I think it could be done at any time before the term of office commences, after the term of office commences, or at any other time during such term. This position gives effect to the plain words of the Constitution according to their tenor and meaning. There is no ambiguity in the language contained in Article VI, Section 14, and, therefore, no logical or legal basis for the construction adopted in the Court's opinion.

I am authorized to say that Judge Lovins concurs in this dissent.

### On Rehearing

Haymond, Judge:

On the rehearing of this proceeding, heretofore granted upon the petition of the contestee, full consideration has been given to the reasons presented in the written brief and in the oral argument in behalf of the contestee to support his contention that the original decision of this Court, with two judges dissenting, should be modified or reversed. Careful review and reexamination of that decision and of the reasons upon which it was based justify the conclusion that it was correct and free from error and that it should not be departed from or altered in any particular. In consequence, the original opinion and the pre-

fixed syllabus points, now reported in 68 S. E. 2d 757, are approved, adhered to, and adopted as the decision of this Court in this proceeding, and the judgment of the circuit court, as indicated in the original opinion, is affirmed.

*Affirmed.*

RILEY, JUDGE, dissenting:

For the reasons stated in the dissenting opinion heretofore filed in this case, Judge Lovins and I dissent from the majority opinion on the rehearing of this proceeding and adhere to and adopt without change or modification the dissenting opinion heretofore reported.